In the Matter of the Estate of JOHN W. CLARK, Deceased.

Surrogate's Court, Kings County, October 10, 1938.

*Prince & Loeb* [*Sidney J. Loeb* of counsel], for the Chase National Bank of the City of New York, Tessie D. Levy and Sidney J. Loeb, as executors and trustees, petitioners.

*Fox & Wintner* [*Hugo Wintner* and *Robert P. Schur* of counsel], for the widow, Mary M. Clark, objectant.

*Chadbourne, Wallace, Parke & Whiteside,* for George Clark, legatee.

WINGATE, S. The present submission marks the renascence of a litigation which has achieved a measure of prominence in recent legal history by reason of the fact that it gave rise to the clarification by the Court of Appeals (*Matter of Clark*, 275 N. Y. 1) of its previous affirmance without opinion of the Appellate Division determination in *Matter of Curley* (245 App. Div. 255; affd., 269 N. Y. 548) which had caused serious misgivings in the minds of many members of the bench and bar.

It may be doubted whether the parties to the present submission are fully alive to the potentialities of the main question upon which they seek decision as a medium for opening a way to an alteration of the result of the former decision by the Court of Appeals in this case. That tribunal determined that the terms of the present will, which granted the fiduciary discretionary powers of investment, were not such as to accord the widow a general right of election pursuant to the provisions of section 18 of the Decedent Estate Law, thus, in effect, reversing the position adopted by the Appellate Division in the *Curley* case in respect of such a situation. This, so far as is discernible from the opinion of the court and the briefs filed, was the sole basis of the decision, no other consideration being urged.

If, therefore, it develops that some other provision of the will, not considered at the time of the decision, has the effect of impairing the minimum statutory right of the widow, there would appear to be a substantial ground upon which to predicate a motion before the Court of Appeals for a reconsideration of its determination that the widow possessed no general right of election to take as in intestacy, since the current rules of that tribunal place no time limit upon such an application.

The issue which is now raised concerns the effect of the " third " and " fourth " items of the will, which, so far as pertinent, read:

" *Third.* I direct that all State and Federal inheritance, transfer or estate taxes be paid by, out of and as charges against my estate, and *shall not be paid* by, *out of* or as charges against *any legacies herein contained.* [Italics not in original.]

" *Fourth.* (a) I give and bequeath an amount equal to one-half of my net estate after the deduction of debts, administration expenses and any estate tax, unto my trustees " in trust for the widow.

The accounts of the executors indicate that they are chargeable with an aggregate total on principal account of $225,644.83, against which credits are claimed by reason of decrease in the value of assets, and debts and funeral and administration expenses paid, of $63,049.70. In this latter total is included $31,114.43 expended

for Federal and New York State estate taxes, the former amounting to $27,360.40 and the latter to $3,754.03. These sums were admittedly paid by the executors, but the widow and one of the other beneficiaries under the will object to the deduction of the total of these sums from the gross estate by reason of the fact, which is admitted in the brief of the executors, that such tax assessments were predicated in part upon a transfer made by the decedent through the medium of an *inter vivos* trust erected by him for the benefit of Tessie D. Levy on November 16, 1934, which was more than a year subsequent to the date of the will and approximately two months after the execution of the codicil.

According to the allegations of the answer of the widow, the taxable avails of this *inter vivos* trust amounted to $98,679.11 and it is to the allocation against the estate of the decedent as a whole of the State and Federal estate taxes on this sum that objection is directed. Obviously, if this action of the executors is in compliance with the directions of the will, the result would be that one-half of the amount of the tax on this property which, whereas taxable under the provisions of pertinent statutes, did not devolve pursuant to the terms of the will, would be payable from the half of the estate which is dedicated to the life benefit of the widow.

The power of a husband partially to defeat the elective rights of a wife in his property by *inter vivos* transfers of portions thereof which was the subject of decision in *Newman* v. *Dore* (275 N. Y. 371); *Bodner* v. *Feit* (247 App. Div. 119), and *Le Strange* v. *Le Strange* (242 id. 74) is not here involved. It is apparent that in some way, valid either by reason of the manner of its accomplishment or in consequence of the acquiescence of the widow, this decedent did succeed, shortly before his death, in transferring to another $98,679.11 in value of his property which would otherwise have formed a part of his estate devolving pursuant to the terms of his will and in which his widow would have possessed intestate devolutionary rights.

Two questions are accordingly raised by the demonstration of the record, the first, and legally more interesting is as to whether it is permissible for a testator by will in substance to make an additional gift to a third party of a sum equivalent to that which such third party would have been compelled to pay to the Federal and State taxing authorities by reason of an extra-testamentary gift had such testamentary direction not been made, or whether such additional gift is in derogation of the rights accorded to his widow under section 18 of the Decedent Estate Law.

The second question is as to whether the terms of the present will are necessarily or properly construable as having intended to make this additional gift.

The purpose of the Legislature in the enactment of section 18 of the Decedent Estate Law, particularly as clarified by the report of the Commission (Legislative Document No. 62 for 1929, pp. 20–21) at the instance of which the statute was passed, is wholly clear to the effect that its intention was to assure a surviving spouse of the beneficial enjoyment of that portion of the estate of a decedent which he or she would have received in intestacy, to an amount not exceeding one-half of the net estate. Obviously this would equal the specified fraction of the gross estate after deduction of the debts and funeral expenses of the decedent and of the costs of administering his estate. Since in intestacy, the survivor would have been compelled to submit to the State and Federal imposts in accordance with the net sum actually received by her, it was obviously proper in making the minimum rights of the survivor of a testate spouse substantially equivalent with those receivable in intestacy, that a similar exaction should be imposed upon the benefit actually conferred. This, and this only, was contemplated in paragraph (a) of subdivision 1 of section 18 of the Decedent Estate Law.

These principles are now established by ultimate authority, since the Court of Appeals stated in *Matter of Byrnes* (260 N. Y. 465, 470) and reiterated in *Matter of Clark* (275 id. 1, 5) that to preclude the assertion of a general right of election by a surviving spouse, the terms of the will must accord " a testamentary gift of an equal sum with the intestate share, or a gift in trust of such a sum for the use of the surviving spouse for life, or a combination of such gifts providing in the aggregate at least such a sum."

The substance of the transaction accomplished by the *inter vivos* gift in the present case was that the testator gave to Tessie D. Levy the sum of $98,679.11 subject to a lien in favor of the taxing authorities, which for concrete illustrative purposes will be assumed to have been ten per cent of the value of the gift, or approximately $9,900. By his will, if the contentions of the executors (of whom Tessie D. Levy is one) are correct, he attempted to make her an additional gift of exoneration from this lien, which additional gift obviously possessed the value of this lien. Such a gift, if actually made, must, however, be in *pro tanto* derogation of the statutory rights of his widow to receive one-half of his net estate under penalty of according her the right to take such one-half outright under the terms of section 18 of the Decedent Estate Law.

It is obviously immaterial in evaluating the authority of the testator in this regard as to whether the invasion of the devolutionary rights of the surviving spouse is great or small. Any invasion,

if it be such, is not permissible. If, however, any invasion, no matter how small, may pass unchallenged the entire beneficent purpose of the enactment is undermined since if the principle be once established, its application would be possible of extension to a point which would destroy the utility of the statute as a safeguard against disinheritance of a surviving spouse. In this connection a situation is readily imaginable in which a decedent, by the medium of taxable insurance and *inter vivos* gifts, might have incurred a potential tax obligation, which, if assessable against the property passing under his will, would either reduce to the vanishing point or wholly destroy any benefits purported to be given thereby, with consequent defeat of the rights of his surviving spouse.

It must, therefore, be obvious that if the interpretation of the will asserted by the executors is correct, its terms unquestionably produce the result expressly condemned in *Matter of Byrnes* (141 Misc. 346, 350; affd., 235 App. Div. 782; affd., 260 N. Y. 465) of effecting a whittling down of the minimum devolutionary right of the surviving spouse " by the ingenuity of the draftsman of a will or by the design of the husband to deprive the wife of her lawful rights."

The next question for examination is whether a proper interpretation of the will indicates an intention on the part of the testator to effect this asserted gift in favor of Tessie D. Levy to the extent of the tax otherwise payable by her, individually, on the *inter vivos* transfer. If the decision be in the negative, the objections to the course of action taken by the executors in this regard must be sustained and there is an end to the question so far as this court is concerned. If it be in the affirmative, the way will be reopened to the widow for the reassertion of her general elective rights against the will as a whole by application for reargument in the Court of Appeals.

The chief language upon which the executors predicate their argument is contained in the " third " item of the will and has already been quoted. Complementary directions may also be found in item " fifth " of the will and item " first " of the codicil.

The references to estate taxes are, as an abstract matter, obviously capable of interpretation in either of two ways, namely, as referring to the exactions imposed upon the devolution of the property actually owned by the decedent at the time of his death, disposition of which is made in his will, or to those assessed against the artificial creation of the taxing statute which includes in the gross base for the computation of tax many items such as life insurance in excess of $40,000 in amount payable to named beneficiaries, assets

actually conveyed during life by the testator and various other species of property which he never actually owned during his life or which had passed from his ownership before his demise.

In the opinion of the court the words hereinbefore *italicized* in the quotation of item "third" of the will are strongly indicative of an intention to confine the effect of the language used to the former of the two conceivable meanings. The testator says in this item that the estate taxes shall be paid from his estate as a whole and "shall not be paid * * * out of * * * any legacies herein contained." The only logical conclusion from the use of the latter phraseology is that all which he intended to exonerate were the gifts actually made by the will and not transfers dehors that document.

This construction is further fortified by the fact that the *inter vivos* transfer did not occur until after the date of the will and no evidence has been adduced to indicate that the testator, at the time of its execution, contemplated the performance of any such act.

The objection of George Clark and the consonant objectives of the widow numbered "first" and "second" are accordingly sustained.

The "third" and "fourth" objections of the widow are directed against the charge of interest on estate tax payments by reason of non-payment of the principal sums of the taxes within the time required by law. As originally framed, these were construable as seeking a surcharge against the executors individually on the apparent theory that their neglect necessitated such additional disbursements. This position has been abandoned by stipulation and the objection is now addressed solely to their charge against income instead of against principal.

This alteration of position creates a somewhat anomalous situation. By the terms of the will, the taxes upon the testamentary gifts are directed to be paid from principal. If, as is inferable from the withdrawal of the implied charge of dereliction of the executors in this regard, they were paid as promptly as the circumstances would permit, the total sum paid, both principal and interest, was the amount of the tax exaction necessarily paid and under the terms of the will, such total would be a principal charge. Obviously under the decision on the first point of the submission a certain portion of this interest as well as a *pro rata* of the principal would be the personal obligation of Tessie D. Levy. The "third" and "fourth" objections of the widow, as amended by the stipulation, are accordingly sustained. That portion of the interest attributable to the property devolving under the will is to be

allocated to principal and the balance is collectible from Tessie D. Levy.

There remains for evaluation the " fifth " objection of the widow which is addressed to the action of the executors in the allocation to her trust of a one-half interest in the premises No. 36 West Sixty-sixth street, New York city (described in the objection as 32 West Sixty-sixth street).

As the court understands the situation, aside from this real property interest and a division of stock, to which no objection has been interposed, the entire share of the widow has been or is to be paid, in cash. The only other real property owned by the testator was specifically devised and the widow is receiving in cash payable into her trust an allowance for her beneficial half interest in its value.

On this factual demonstration there is no merit whatsoever in this objection of the widow. All to which she is entitled in addition to her outright $2,500, is the beneficial enjoyment of a half interest in a fair cross-section of the net assets of the decedent at the time of his death. (*Matter of Bommer*, 159 Misc. 511, 519.) As to this particular item of property she is receiving exactly that. She consequently has no just cause for complaint in this regard and this objection is overruled.

Enter decree on notice in conformity herewith.