In the Matter of the Estate of BELLA M. KAUFMAN, Deceased.

Surrogate's Court, New York County, January 26, 1939.

*Riegelman, Hess, Strasser & Hirsch* [*Harry F. Mela* and *Mortimer H. Hess* of counsel], for the executors.

*Harry Weinberger*, for Jesse L. Kaufman, individually and as executor of Henrietta Kaufman, deceased, Sydney L. Kaufman and Pauline K. Schoen.

*Sidney Rossman*, for Joseph S. Kaufman, Emanuel Kaufman, George S. Kaufman, Ruth K. Friedlich and Helen K. Lieberman.

*Wise, Shepard, Houghton & Lebett* [*Wolsey A. Shepard* and *Daniel J. Clifford* of counsel], for the Continental Bank and Trust Company of New York, as successor trustee, etc.

*M. S. & I. S. Isaacs*, for Edgar A. Levy and Andre Caron, as trustees under assignment in trust, and for Marjory Jane Caron, as general guardian of infants.

*Davidson, Moses & Sicher* [*Dudley F. Sicher*, *Maxwell Davidson* and *George Schreiber* of counsel], for Marion K. Heller and William B. Heller.

DELEHANTY, S. In this accounting proceeding objections by persons who participate in the residuary estate raise the issue whether under the will of deceased estate taxes imposed in part upon property donated by deceased in her lifetime are chargeable wholly to the residuary estate. Objectants insist the donees should bear a proportion of the tax and that the provisions of section 124 of Decedent Estate Law requiring apportionment are applicable to this estate.

Deceased died June 17, 1936, leaving a will which was executed on October 29, 1934. The will is the latest of five instruments drawn by deceased. Each of the wills executed by deceased follows a fundamentally similar testamentary pattern except the last will. Objectants assert that the transactions which are hereinafter commented upon fully explain an apparent alteration in the testamentary purposes of deceased after the will of 1931 and confirm the assertions made by objectants that the donative purposes of deceased never altered. From this premise objectants argue that the purpose of deceased was to have equality of tax burden among her beneficiaries and that the provision in the last will of deceased is to be read in the light of that purpose.

By paragraph tenth of her will dated April 2, 1930, deceased gave equal shares in her residuary (sixteen and one-half per cent) to a niece, Mrs. Heller, and to a nephew, Mr. Klee. In that will she made the following direction respecting estate taxes: "*Fourteenth.* I direct that any and all transfer, inheritance, estate and succession taxes that might otherwise be deductible from the bequests contained in provisions " Second " to " Ninth," both inclusive, shall be paid out of my residuary estate, so that the said bequests may be paid in the full amount hereinabove designated."

By paragraph sixteenth of her will dated June 17, 1931, deceased gave equal shares (eighteen per cent) in her residuary to the Heller family and to the Klee family. In this will she said in paragraph fifteenth: " I direct that all estate, transfer and succession taxes and duties shall be a charge upon and payable out of my residuary estate."

By paragraph ninth of her will dated May 6, 1932, deceased gave to the Heller family thirty-five per cent of her residuary estate and nothing to the Klee family. In this will she made the following direction as to estate taxes: "*Eighth.* I direct that all estate, transfer and succession taxes and duties shall be a charge upon and payable out of my residuary estate."

By paragraph twelfth of her will dated June 7, 1933, deceased gave thirty-four per cent of her residuary to the Heller family and nothing to the Klee family. She gave directions as to the estate

taxes in the preceding paragraph eleventh which says: " I direct that all estate, transfer and succession taxes and duties on the foregoing bequests shall be a charge upon and payable out of my residuary estate."

The last will of the deceased was executed October 29, 1934. By paragraph eleventh it gives to the Heller family only eighteen per cent of the residuary estate and makes no mention of the Klee family. It says respecting taxes the following: " *Thirteenth.* I direct that all estate, transfer and succession taxes and duties shall be a charge upon and payable out of my residuary estate."

In the last will and in the wills dated June 17, 1931, and May 6, 1932, it will be perceived that the tax clause is identical. The instruments dated April 2, 1930, and June 7, 1933, respectively, were drawn by a different attorney. In the instrument of April 2, 1930, the tax clause quoted above precedes the residuary clause and refers in terms to taxes upon gifts contained in the preceding clauses second to ninth. In the instrument dated June 7, 1933, the tax clause precedes the residuary gifts and contains a reference to taxes " on the foregoing bequests."

Among other things which are argued by the executors and the donees of the property transferred by deceased in her lifetime is that the tax clause found in the last will of deceased was drafted especially because of the knowledge possessed by the draftsman that simultaneously with its execution a gift had been made by deceased. It is argued that the text used by the draftsman coupled with the fact of his knowledge of the gift shows that the intention of the testatrix was to have paid out of her true estate any and all estate taxes including those upon the donated property. The foregoing recital of the chronology of the testamentary instruments and of the formulae used by deceased therein in respect of the tax burden shows the argument to be without basis. The whole group of testamentary instruments establish clearly that deceased had no special purpose in the choice of words used by her in her last will respecting estate taxes. At a time when concededly she had no thought of gift in mind (June 17, 1931, and May 6, 1932) she used in her then wills language identical with that in the last will. She shifted from the 1930 text drawn by Mr. Rossman to the 1931 text drawn by Mr. Hess. She adhered to the Hess formula through 1932. She reverted to the Rossman formula in 1933 and again back to the Hess formula in her last will. The fact of the matter is that no purpose can be attributed to deceased to effectuate any special result in relation to her estate taxes.

The proof presented to the court of the background against which the will was drawn and against which its language must be inter-

preted shows that deceased was on equally affectionate terms with the Heller and the Klee families at least until exigencies of the depression resulted in the borrowing by Mr. Klee from the Heller family of a very substantial amount of money which he was unable to pay back. It was shown that deceased had implicit confidence (a confidence justified by the event) that the Heller family would deal justly with the Klee family in respect of deceased's property and so beginning with the will of May 6, 1932, and continuing through the will of 1933 deceased gave to the Heller family a proportion of her residuary estate intended to be twice the amount which the Heller family was to retain for themselves. It was the purpose of deceased that when and if the indebtedness of Mr. Klee to the Heller family had been discharged (or, if not discharged fully, then to the extent that it was discharged) there would be a voluntary transfer by the Heller family to members of the Klee family which would operate to give the Klee family the same parity of benefit that had been prescribed in the earlier wills.

When the 1934 will came to be drawn the plan in its essentials remained the same but in its detail was changed. The Heller share in the residuary of the true estate was reduced to eighteen per cent — a percentage roughly equivalent to that provided for the Klee family in the wills of 1930 and 1931; and there was donated to the Heller family simultaneously 4,800 shares of a listed stock of an industrial company. These shares had at the time of the gift a value substantially equivalent to eighteen per cent of deceased's then total estate. Accompanying the gift was a letter in which a reason for the making of the gift was stated which differs from the reason which the court finds in fact actuated deceased in the making of it. This letter is dated October 30, 1934. In a letter dated the preceding day addressed to the same person deceased explained her purposes in leaving eighteen per cent of the residuary estate to a donee of the gift. In that letter of October 29, 1934, deceased said in effect that she relied upon her niece, Mrs. Heller, to give to the Klee children the whole of the testamentary gift to Mrs. Heller after first deducting any loss sustained by the Heller family by reason of the loan to Walter Klee. (Parenthetically it may be said that the loan has been repaid and the beneficiary under the will has in fact set up the trust and has thus justified the confidence reposed in her by deceased.) In due course and when the report of the gift transaction was required deceased made a report of the gift and paid the gift tax thereon.

The court is satisfied that what deceased had in mind was the giving of immediate assurance to her niece that she would not lose nor would any of her family be at loss because of the loan to Walter

Klee. To assure that result and to assure to the Heller family immediately the income which it could have received upon the resources which were devoted to the loan to Mr. Klee, deceased put the shares actually into the hands of the Hellers. That this was only part of her general donative scheme is obvious from the terms of the letter of October 29, 1934, whereby she expressed the confident hope that the Klee family would get the benefits always intended for them conditioned only upon the repayment by the Klee family of the indebtedness.

While the dating of the gift and the gift letter differs slightly from the dating of the will and the will letter it is quite obvious that deceased had a single scheme in mind and that the excision from her estate of the shares of stock and the payment of a gift tax thereon was part of that scheme. It is not consistent with that scheme that there should be levied upon the true estate any estate tax due by reason of inclusion of the donated property in the gross tax estate. If such burden were imposed then not only would the share of the Heller family be increased beyond the level intended by deceased but the share ultimately and actually intended for the Klee family would be decreased below the share intended for them when the Klee loan was repaid. Nothing in the text of the will when considered against the background of fact hereinabove recited requires the court to find a direction against apportionment. Apportionment is equity. Apportionment results in equitable treatment both of the Heller and of the Klee families. That equitable treatment is shown beyond peradventure to have been intended by deceased to operate as between these family groups. It would be a violation of the clearly disclosed intent of deceased to do other than apportion the tax.

While the court has construed the will and has found the intent of deceased in respect of the tax burden it should be stated that the mandate contained in section 124 of Decedent Estate Law puts the burden of establishing a reason for non-apportionment upon those who contend for that result. In the absence of specific words directing non-apportionment strong showing must be made that an intent to effect an inequitable apportionment is clearly disclosed in the will. Language of doubtful import — that is, language which is subject to interpretation either way — will not suffice to change the rule of apportionment commanded by the statute.

The record discloses that while 4,800 shares of stock were donated by deceased substantially simultaneously with the making of her last will the controversy between the executors and the taxing authorities over the taxability of the property resulted in the inclusion in the gross tax estate of the value of only 2,400 of such shares.

It is suggested by one of the parties that the value of the whole body of shares should be considered when apportionment is made. The propriety of this naturally is denied by the donees. If further hearing on this subject is requested by either party to this controversy a further hearing will be granted by the court. Otherwise the executors are directed to supply to the court at the time the decree is noticed for settlement all computations necessary for the apportionment of the tax burden. Such computations are to be served on the parties appearing by counsel. The latter may submit counter-computations if desired.

The foregoing rulings on the apportionment of estate taxes dispose of all objections filed by participants in the residuary estate so far as their objections relate to the capital of the estate tax imposed upon the total " tax estate " of deceased. Specific rulings on this part of the objections require the sustaining of the objections of Marjory Jane Caron as general guardian, also the sustaining of the objections of Edgar A. Levy and Andre Caron as trustees, also the sustaining of the objections of Continental Bank and Trust Company and also the sustaining of item I of the objections of Joseph S. Kaufman and of Emanuel Kaufman so far as such item relates to the construction of clause thirteenth of the will of deceased and the proration of the capital of the estate taxes. Objections similar in form to those filed by Emanuel Kaufman and Joseph S. Kaufman were filed by George S. Kaufman, Ruth K. Friedlich and Helen K. Lieberman who claim to have " a remainder interest " in the estate. So far as their objections relate to income, as item I does in part, they are not interested parties. So far as they have an interest in corpus they are represented by the trustees of the trusts in which they claim a remainder interest. All questions raised by their objections as to corpus are passed upon under other objections and for the sake of regularity the objections of this group of three so-called remaindermen stand dismissed. The objections of Jesse L. Kaufman raise no issue as to the proration of the estate tax though payments both of principal and of penalty interest thereon are attacked on grounds which are dealt with hereafter in this decision. The attorney for Jesse L. Kaufman also appeared in the proceeding for other participants in the residuary but since no objections in their behalf were filed by him the account stands approved so far as they are concerned.

There is made (but only by Emanuel Kaufman and by Joseph S. Kaufman having respectively an eight per cent and a ten per cent interest in the residuary) an objection to the account which deals with the loss of income to the residuary estate by reason of failure of the executors to collect the *pro rata* shares of the estate tax. The

objection is phrased thus: " To the extent to which the residuary estate has lost income through failure of the Executors to collect for the residuary estate the shares which would have been contributable by the various beneficiaries had pro-ration been had and contribution enforced, said beneficiaries should now be made promptly to contribute such further sum as may be required to make up said loss of income." So far as this objection seeks to charge either the executors or the legatees under the will with any contribution to the income of the residuary it is overruled. Clause thirteenth of the will made the estate taxes upon the true estate of deceased a charge upon the residuary estate. The beneficiaries of legacies were not called upon to pay nor were the executors authorized to exact from them any contribution to the estate tax.

The objections of Harry Weinberger were disposed of by decision in *Matter of Kaufman* (169 Misc. 714).

The objections of Jesse L. Kaufman not hereinabove ruled upon are disposed of as follows: Objection I is overruled. The court holds that the payment made for legal service was reasonable, subject to the condition hereafter stated in respect of fees. Objection II is sustained, the court holding that the fee already paid is adequate for the entire administration of the estate including the services to the entry of the decree. Objection III is overruled so far as it charges negligence or lack of prudence on the part of the executors and so far as it asserts that the taxes there objected to were paid unlawfully and improperly. The court has directed an apportionment which will require contribution by the donees of a gift made by deceased. There is nothing in the proof to warrant any attack upon the good faith of the executors in the tax controversy or upon the propriety of their dealings with the tax claims in general. Objection IV is overruled, the court holding that there was no lack of care on the part of the executors. Objection V is sustained so far as the ten per cent interest of this objectant in the residuary is concerned. The court holds that the executors had in their hands available for distribution the sum of $250,000 which could and should have been distributed to the residuary beneficiaries seven months after the date of letters. The remaining securities and the balance of the cash in the hands of the executors were ample to secure every actual and every apprehended liability from and after that date. Every reasonable reserve would still have left at least the stated sum for distribution to the residuary legatees. Accordingly this objectant is entitled to have paid to him six per cent interest on $20,000 from and after January 26, 1937, and down to May 14, 1937, and the further sum of six per cent on $5,000 from and after January 26, 1937, down to January 12, 1938. To

the extent stated the objection is sustained. Against this liability the executors may credit themselves with the actual earnings upon these respective sums for the periods stated.

The only objection of Emanuel Kaufman and Joseph S. Kaufman not heretofore ruled upon is item II. This is a conditional objection only. Since the court has limited the attorneys to the sum already paid them and since it has disallowed the claim of Harry Weinberger the objections under this item are deemed satisfied and no ruling is required thereon.

Submit, on notice, decree construing the will, directing apportionment of estate taxes and settling the account in accordance with this decision.

Opinion February 16, 1939.

DELEHANTY, S. By decision heretofore published (170 Misc. 436) there was reserved for further hearing the determination of the basic factors governing the computation of the contribution to the Federal estate tax ordered in the prior decision to be made by the donees of property referred to therein. On the present application to determine that contribution the donees make claim that because certain residuary legatees executed waivers and certain other residuary legatees failed to file objections and because another legatee filed objections not dealing specifically with tax burden allocation, the allocation set forth in the account is binding and thus the donees are exonerated at least in part from contributions otherwise demandable of them. Other of the parties seem to suggest that the donees should be compelled to pay in full but that the payment when received should be credited only to those who raised issue as to the need of the donees to contribute. Each contention is unsound. The court's power to allocate taxes is invoked by the supplemental petition in this proceeding which for the first time asked for a determination of the tax burden and for the bringing in of a necessary party not theretofore cited. The court's power under section 124 of the Decedent Estate Law is plenary. The objective sought to be accomplished by the section is the equitable allocation of the burden of the taxes among all the parties actually affected by that burden. The section does not envisage piecemeal applications of individuals for the fixation merely of their separate rights but rather a comprehensive survey of the tax problem and a comprehensive determination of the tax liabilities of all the parties interested in the property taxed. The allocation is an integral whole.

The controversy on the merits of the allocation concerns the value to be assigned for tax purposes in measuring " the value of the property, interest or benefit " received by the donees. The

donees concededly received 4,800 shares of a listed stock. The stipulated facts show that the sole controversy with the Federal taxing authorities as to the quantum of the property subject to tax was in respect of this block of 4,800 shares. The tax authorities insisted that the whole of the shares be taxed at an assigned value of $327,600. The donees and the executors contended that none of the donated property should be taxed. In the course of the negotiations conducted by the executors with the revenue authorities a compromise was reached which is described in the stipulation of facts as follows: " the issue as to the inclusion of the said gifts as a part of the gross taxable estate of decedent was compromised between the executors and the United States Treasury Department by the determination that the gifts should be taxed at $163,800 by including for Federal estate tax purposes only 2,400 of the total of 4,800 shares * * *; and the effect of such compromise was to add $163,800 to the gross taxable estate of the decedent." Thus it is established by formal concession of the interested parties that the only donated property taxed was 2,400 shares of the stock and the only value assigned to this part of the taxed property was $163,800. It is indisputable that the gross tax estate comprised only the true estate assets plus $163,800 of value assigned to the donated property. In such circumstances the position now taken by the beneficiaries of the true estate that the contribution to the Federal estate tax by the donees should be based on 4,800 shares and on $327,600 lacks support of any kind.

Under the statute the parties are to contribute in accordance with " benefits received." It is argued here that since the benefit received by the donees was a benefit of $327,600 that sum should be used as a factor in measuring their tax liability. The vice in the argument lies in the fact that the residuary legatees are talking about benefits received from deceased while the statute talks about benefits received which are included in the tax estate. Section 124 of the Decedent Estate Law refers to an allocation of the burdens imposed upon property *actually taxed*. The stipulated facts limit the actually taxed property received by the donees to $163,800 of value. Only that value can be used by the court in performing its function of allocation. While the court holds that section 124 of the Decedent Estate Law is complete in itself and is not susceptible of any construction other than that here given, it is worth noting that in section 249-t of the Tax Law there is granted to the surrogate jurisdiction " to finally determine the amount of the tax imposed by this article, and to fix and adjudge the proportions in which the same shall be borne by the persons interested in the estate." By subdivision (g) of section 249-m of the Tax Law the term " person

interested in the estate" is defined and it is there stated that the term includes "all persons who may be entitled to receive or who have received any property or interest which is *required to be included* in the gross estate." (Italics supplied.) So far as these donees are concerned the only property required to be included in the gross estate was the $163,800 of value assigned to 2,400 shares of the stock donated. The court is bound by the actual fact of inclusion or exclusion of property by the taxing authorities. Whatever may be said respecting the logic of the course pursued by them the fact is that only 2,400 shares and only $163,800 of value was taxed. The court begins its allocation task at the point where the taxing authorities terminate their work of fixation of gross tax. The court is not a reviewing body. It may not say that something else should have been done by the taxing authorities that in fact was done. It takes the accomplished fact of taxation and then allocates the burden on the basis of actuality of tax.

Note should be made of the argument advanced in behalf of Jesse L. Kaufman whose attorney says that the executors are surchargeable with the loss to the residuary estate by reason of the fact that the tax contribution on the part of the donees is about to be fixed by the court at a fraction lower than it should be and lower than it would have been if the executors had dealt on a different basis with the "compromise" with the revenue authorities. The argument is that the government was prepared to tax the true estate plus $327,600, the value of the whole of the donated shares; that the offer of compromise should have been considered as an offer to tax a gross total of property at $163,800 less than the gross estate thus computed; that a compromise effected on this basis would have operated to the advantage of the residuary estate and that the $163,800 reduction would have been allocable to the true estate in the proportion which the true estate bore to the total sum of the true estate plus the value of 4,800 shares; and that thus and only thus would the executors have fully performed their obligation to secure for the true estate its ratable participation in the government's generosity in treating with the estate representatives and in fixing a discount on the gross property to be taxed. If the figures of the true estate (after deductions) are varied slightly and made $1,360,000, and the value of 4,800 shares is varied slightly and made $340,000, it will be seen more readily what the argument means in dollars and cents. On these assumptions the gross estate upon which the government asserted a right to impose a tax would be $1,700,000 and twenty per cent of that gross would be the value of the donated property. If the concession by the government of $170,000 (one-half of the value assigned to the donated property)

were allocated to the whole body of the property the total to be taxed would be reduced ratably but the percentage of participation of true estate and donated property would still remain the same — eighty per cent true estate and twenty per cent donated property. On that theory the tax payable by the donated property should be one-fifth of $314,000, or $62,800. This figure contrasts with the $33,600 provided for in the executors' computation. The argument might be said to be ingenious, perhaps, but it lacks support in the facts. The government made no tender of reduction on the whole body of property. The controversy with the government related exclusively to the taxability or non-taxability of the 4,800 shares. The parties have stipulated that the compromise related solely to that question. After objections were filed the executors were held to be without fault in the conduct of the tax proceedings. The specific objection now made was not made at an appropriate time but even if so made it would have to be dismissed.

Notice should be taken of a suggestion by one of the residuary legatees that the court is confronted with the difficulty of determining *whose* 2,400 shares out of the whole body of 4,800 shares were taxed. The problem need not concern either the legatee or the court. The donees have expressly acceded to the equal division of the tax burden on the donated property.

For all the reasons stated the court adopts as correct the method of computation submitted by the executors. The allocation of tax burden will be made in conformity with such computation.

Submit, on notice, decree construing the will, settling the account and allocating the Federal estate taxes in conformity with this and the prior decision of the court. The decree should recite the making and denial of the application referred to in the decision published in *Matter of Kaufman* (N. Y. L. J. Feb. 9, 1939, p. 648).