In the Matter of the Estate of JOSEPHINE DEL DRAGO, Deceased.

Surrogate's Court, New York County, October 19, 1940.

*Grant, Clark & Fox,* for Byron Clark, Jr., petitioner.

*Ludwig M. Wilson,* for Giovanni del Drago, petitioner.

*Laughlin, Gerard, Halpin & Graham,* for The Corn Exchange Bank and Trust Company, as trustee.

*William J. Donovan* and *David Teitelbaum,* for Marcel del Drago, respondent.

*Robert W. Maloney,* for Giovanni del Drago, individually.

*Samuel R. Kurzman,* for Guiseppe Vitagliano and Yorktown Building Corporation, claimants.

*Lawrason Riggs, Jr.,* special guardian.

*Harold W. Hastings,* special guardian.

FOLEY, S. The issues in this contested accounting proceeding are disposed of as follows:

Two of the beneficiaries of this estate named in the will of the testatrix, which was executed in New York, assert that any apportionment of the Federal estate tax made pursuant to the provisions

of section 124 of the Decedent Estate Law, is violative of certain articles of the Federal and State Constitutions.

The surrogate overrules all such objections to the constitutionality of the statute and to the equitable proration of the tax to be made in this estate against the respective interests of all the beneficiaries named in the will. Reliance for this conclusion might be based alone upon the authority of *Matter of Scott* (158 Misc. 481; affd., 249 App. Div. 542; affd., 274 N. Y. 538; certiorari denied, *sub nom. Northwestern Mutual Life Ins. Co.* v. *Central Hanover Bank & Trust Co.*, 302 U. S. 721). In that case general grounds of the unconstitutionality of the statute were raised. Specifically, it was also asserted that section 124 of the Decedent Estate Law had been unduly extended in its scope to permit the apportionment of the tax against the insurance company and the beneficiaries of insurance policies, the proceeds of which had been included in the net taxable estate. The apportionment involved both the Federal and New York estate tax. Mr. Surrogate DELEHANTY, in his opinion, reviewed the plan of the new section and the applicable Federal authorities and sustained its complete validity. His decision was. affirmed by the appellate courts of our State and certiorari was denied by the United States Supreme Court. In *Matter of Kaufman* (170 Misc. 436) and *Matter of Ryle* (Id. 450) further discussion of the legality of the section was made and the conclusion of constitutionality reiterated. No appeal was taken from either of those decisions.

In the pending proceeding no question of the proration of the tax upon insurance moneys or upon transfers made *inter vivos*, which might have been included in the net taxable estate, is involved. If such question had arisen, necessarily the determination reached in *Matter of Scott* (*supra*) would have destroyed any foundation for a contention against the right of apportionment. But the disposition of a proration as against the beneficiaries named in the will, such as is here involved, is even simpler of understanding. The property passes at death by virtue of a privilege granted by the State of New York. That privilege extends not only to the making of the will, but also to the imposition of an estate tax upon the succession, plus power in the Legislature to declare what persons shall bear the burden of the Federal and State tax. So far as the words of the Federal statute are concerned, " the United States does not care who ultimately bear the weight of this tax; it announces the sum and demands payment from the executors; if the legatees and devisees cannot agree as to the burden bearing, the State courts can settle the matter." (HOUGH, J., in *Edwards* v. *Slocum*, 287 Fed. 651, 653; affd., 264 U. S. 61.) To that state-

ment may be added, where the Legislature has provided the method of apportionment of either or both of the taxes, as an incident to the privilege of inheritance, the courts must apply and enforce the statutory rules.

Subsequent decisions of the Federal courts have reaffirmed the right of the State of the domicile of the testator to provide for the distribution or allocation of the Federal estate tax. (*Young Men's Christian Assn.* v. *Davis*, 264 U. S. 47, 51; *Hepburn* v. *Winthrop*, 83 F. [2d] 566.) Once the tax is levied and paid to the United States government, its interest in the source of payment terminates. The States may adopt varying rules. New York, in its legislation, has chosen to apply a rule based upon justice and equity. It has permitted the testator to say where the burden of the tax shall fall, by an appropriate direction in his will or in the *inter vivos* indenture. In the absence of any such direction, the burden of the tax is laid against each of the beneficiaries proportionately to the pecuniary advantage received.

The objectants, who assert unconstitutionality here, cite statements in opinions of the Court of Appeals rendered prior to the enactment of section 124 of the Decedent Estate Law, in *Matter of Hamlin* (226 N. Y. 407) and in *Matter of Oakes* (248 id. 280). These statements have not the slightest application to the changed situation created by the new section, which took effect on September 1, 1930. The legislation had been drafted and its passage recommended by the Decedent Estate Commission. Its purpose was fully set forth in the note printed with the bill. (N. Y. Legis. Doc. [1930] No. 69, p. 226.) That note was indicative of the legislative intent. In it the hardship of the then existing rule, which imposed the full burden of the Federal and State tax upon the residuary legatees, was stressed. *Matter of Hamlin (supra)* and *Matter of Oakes (supra)* were cited in the note, as well as the decision of Judge HOUGH in *Edwards* v. *Slocum (supra)*. The note recited, " that each State is at liberty to determine according to its own laws in what manner the Federal estate tax shall be borne by the persons interested in the estate." All existing rules as to the specific source of the payment of the tax were thus intended to be changed by the new section, which provided for equitable allocation, unless the will specifically directed a different form of imposition of the tax. When the section was enacted the Legislature must be presumed to have known what interpretation had theretofore been put upon the statutes by the courts. It was charged with knowledge of existing legal principles which, in framing the statute, it desired to alter and improve. " The general rule, as I understand it, is that when the Legislature amends or enacts

anew a statute it will be assumed that it had full knowledge of all the judicial decisions theretofore made interpreting the statute as then existing, and that being so, the new enactment must be read in the light of such previous interpretation." (McLAUGHLIN, J., in *Matter of Cole*, 235 N. Y. 48, 53, citing *Orinoco Realty Co., Inc.*, v. *Bandler*, 233 id. 24; *Komada & Co.* v. *United States*, 215 U. S. 392; *Caesar* v. *Bernard*, 156 App. Div. 724; affd., 209 N. Y. 570.)

It should also be noted that the provisions of section 124 of the Decedent Estate Law were made expressly applicable to the estates of persons dying after August 31, 1930. The testatrix here made her will in 1934; she died on October 8, 1937. It was her privilege to direct what parts of her estate or what persons should bear the burden of the tax. Her will is silent in that respect. She is presumed, therefore, to have drawn her will with knowledge that the statute providing for an equitable apportionment of the taxes would apply to her estate.

No Federal question nor any ground of unconstitutionality, therefore, attaches to the provisions of section 124 of the Decedent Estate Law, nor to the method of the equitable apportionment of the tax made pursuant to its terms. The objecting beneficiaries must bear their fair portion of both the Federal and State tax assessed upon the passing of the decedent's property.

(Other directions included in the original decision of the surrogate omitted because of their subordinate importance.)

Submit decree on notice settling the original and supplemental accounts, in accordance with this decision and any additional instructions given by the surrogate at the hearing held on June 25, 1940. Such decree may contain a reservation for the submission of a supplemental confirmatory decree after the service and return of the supplemental citation as to the additional infant party recently brought into the proceeding. The special guardian for such infant is instructed to file a supplemental report after the return of such citation and before the entry of the supplemental decree.