In the Matter of the Will of JACOB G. DETTMER, Deceased.

Surrogate's Court, Kings County, February 9, 1943.

*Aaron Frank* for City Bank Farmers Trust Company, as trustee, petitioner.

*Floyd C. Williams* and *Frank H. Shaffer* for Margaret S. Pugh and others, respondents.

*Walter Jeffreys Carlin* (*William F. Mathias, Jr.*, with him on the brief), for County of Miami in Ohio and others, respondents.

*T. Fergus Redmond* for Empire Trust Company, as executor of Carolyn D. Wood, deceased, respondent.

*John F. Brosnan, Harold G. Pickering* and *Richard S. Ritzel* for Brooklyn Institute of Arts and Sciences, respondent.

*Bruce D. Manson, Harold J. Manson* and *Ralph Hemstreet* for Orphan Society of City of Brooklyn, respondent.

*Francis J. Rogers* for Mary Vogelslang and others, respondents.

*John J. Bennett, Jr., Attorney-General,* for State of New York.

McGAREY, S. The residuary trust created by testator for the benefit of his two children having terminated, the trustee has accounted and, as an incident thereof, application is made for a final apportionment of the State and Federal estate taxes pursuant to section 124 of the Decedent Estate Law. This application was held in abeyance, pursuant to a decree of this court, pending the review by the United States Supreme Court of the decision rendered by the Court of Appeals in the *Matter of del Drago.* The constitutionality of said section was upheld when the United States Supreme Court adopted the original holding of Surrogate FOLEY in that case (*Riggs* v. *del Drago,* 317 U. S. 95, revg. *Matter of del Drago,* 287 N. Y. 61, which reversed 175 Misc. 489).

The testator made certain specific bequests of personal property to his two children, considered in the State Tax Appraiser's report as having a gross value of $4,008.50 and assessed by the Internal Revenue Collector at $4,362.50. Testator made gifts in trust of $5,000 to a cemetery and another of $10,000 with the income thereof payable to one Mary McGinley, an employee, during her life. These trusts were expressly exempted by the will from State and Federal legacy, inheritance or estate taxes. He then gave a legacy of $2,000 to one Alice Wrynn, another employee. The residue of his estate was given in trust to pay the income to his two children during their lives and, upon death of the survivor of said children, the entire principal of his residuary estate was disposed of as follows: $75,000 to his niece Minna S. Coolidge; $75,000 to his nephew Otto D. Steil; $10,000 to Brooklyn Institute of Arts and Sciences; $10,000 to Orphan Asylum Society of the City of Brooklyn; and the residue of the remainder to the county of Miami, Ohio, for charitable purposes.

The gross taxable estate for State estate tax purposes was $852,722.25, after exempting $712,132 for charitable bequests. Allowing a full exemption for the cemetery trust, the balance of the deductions was applied as follows: $5,066 to each of the Brooklyn charities and the balance of $697,000 to the county of Miami, Ohio.

The gross taxable estate for Federal estate tax purposes was $941,302.98, which was arrived at before deducting the specific exemption of $50,000 and after deducting $635,886.91 for charitable bequests. The deduction of $635,886.91, upon computation, is applied as follows: $4,682.36 to each of the Brooklyn charities and the balance of $626,522.19 to the county of Miami, Ohio.

The gross State estate tax was $32,563.34 which, by the trustee's proposed method of apportionment, was apportioned as follows: Miscellaneous, special and general legacies, $153.06; McGinley trust, $224.95; and the residuary trust, $32,233.43.

The gross Federal estate tax was $124,512.78 which, by said method, was apportioned as follows: Miscellaneous, special and general legacies, $577.06; McGinley trust, $860.21; and the residuary trust, $123,258.25.

The McGinley trust, having been declared by testator to be free of tax, the tax applicable thereto is to be borne by the county of Miami, Ohio, which receives the residue of the remainder.

The remainder available for distribution is $1,508,048.42, of which $75,000 each was bequeathed to Minna S. Coolidge and Otto D. Steil, niece and nephew of testator, or their issue; Brooklyn charities, $10,000 each; and the county of Miami, Ohio, $1,338,048.42.

The conflict between the various interests in this estate arises from their respective interpretations of the provisions of section 124 of the Decedent Estate Law requiring that there shall be no apportionment between remainders and temporary estates, but that the tax on both such temporary interest and on the remainder thereafter shall be charged against and paid out of the corpus of such property or fund, and the application of the further provision that in computing the share of the tax to be borne by each beneficiary, allowance shall be made for any exemptions or deductions from the gross taxable estate allowed by the taxing statute.

An estate tax is imposed upon a legacy before it reaches the legatee, and the legacy becomes his property only after it has suffered a diminution to the amount of the tax. (*Matter of Ryle,* 170 Misc. 450.) It accrues at the same time that the estate

vests, that is, upon the death of the decedent. (*Matter of Penfold,* 216 N. Y. 163, 167; *Matter of Swift,* 137 N. Y. 77, 83.) It never shrinks or increases no matter what the shrinkage or increase may be in the balance receivable by the beneficiaries; it is for the time being in the custody of the estate's fiduciary but, when demand for payment is made, the whole taxable estate must respond. (*Matter of Kaufman,* 170 Misc. 436.)

Section 124 of the Decedent Estate Law was enacted to prevent the entire burden of an estate tax from being borne by the residuary legatees, who generally are the principal objects of the decedent's bounty. The section is merely an instrumentality for the administration of the Tax Law and of estates generally, and is only a procedural and administrative enactment. (*Matter of Ryle, supra.*) The law itself is most equitable in the distribution of the burden and is clear, definite and certain in its provisions. If further clarification of the intent of the law were needed, it is set forth in the reports of the Decedent Estate Commission, on whose recommendation the law was enacted.

The section applies to all cases where the decedent by his will does not state in clear, definite and unmistakable terms the source or the method of the payment of the estate tax. (*Matter of Walbridge,* 170 Misc. 127, 128; *Matter of Kaufman, supra.*) Where there is such a clear, definite and unmistakable provision in the will it controls and the section is not applicable (*Matter of Duryea,* 277 N. Y. 310, 316; *Matter of Stetson,* 168 Misc. 836, 838), in which connection the testamentary document is subject to strict construction. (*Matter of Clark,* 169 Misc. 202, 208.)

The first direction is that the tax shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues.

The method of proration is stated to be in the proportion, as near as possible, that the value of the interest of each person bears to the total value of the interest received by all persons in the estate.

In making the proration, allowance must be made for any exemptions allowed by the taxing statute or for any deductions allowed in computing the net taxable estate (*Matter of Tierney,* 176 Misc. 675; *Matter of Starr,* 157 Misc. 103), and where a trust or temporary life or lesser estate is created, the tax on such life or lesser estate shall be charged against and paid out of the corpus of the property without apportionment between the remainders and temporary estates.

Where property, not passing through the estate, is included in the gross taxable estate, the fiduciary may recover from the person receiving such interest or in possession thereof the pro-

portionate amount of the tax resulting from such inclusion which the persons interested in the estate are chargeable with under the provisions of said section.

In this proceeding no problem is presented with respect to the inclusion in the gross taxable estate of property not passing through the estate, and this decision is limited solely to the apportionment of an estate tax where the entire gross estate passes through the decedent's estate and pursuant to the provisions of his will. Another method of apportionment may apply where assets not passing through the estate are included in the gross taxable estate.

Section 124 of the Decedent Estate Law is definite in providing that the beneficiary is entitled to credit or allowance in the apportionment of the tax for exemptions allowed or deductions permitted to the estate applicable to such beneficiaries. No other method would insure to the widow, or relatives of a decedent, the benefits of exemptions granted to them or permit charitable beneficiaries to receive the similar benefits to which they are entitled under the law and for which the estate receives credit in the computation of the net taxable estate.

The confusion in this estate in the present proceeding arises out of the fact that the charitable beneficiaries are presently receiving $1,358,048.42, whereas the deductions allowed to the estate by the State and Federal taxing agencies are only $707,132 and $635,886.91, respectively, for such charitable gifts. The reason for this is that the tax is assessed as of the date of death and the value, as of that date, of the legacies to the charitable beneficiaries is not the full amount which they are presently receiving but the then value of their remainder interest which is substantially the difference between the amount presently passing to them and the value of the preceding life estates. It therefore follows that the charitable beneficiaries must pay their share of the estate tax which arises by reason of the inclusion in the gross estate of the value of the preceding life estates. (*Matter of Starr, supra.*)

The section provides there shall be no apportionment between life estates and remainder interest, but the tax shall be borne by the corpus of the fund out of which life estates and remainder interest are created. This is not only equitable but proper. The two Brooklyn charities which receive general legacies of $10,000 each, payable out of the residue and remainder, claim that they should not bear any portion of the tax but each should receive its $10,000 free of any tax. The fallacy of this contention is obvious when it is realized that the only allowance which was granted to the estate by reason of such charitable legacies was

the value of their remainder interests as of the date of the death and therefore they must pay a tax on the difference between that value and the $10,000. The individual beneficiaries of the remainder, who receive general legacies of $75,000 each, suggest a formula for apportionment suitable to them but at variance with the directive provisions of section 124 of the Decedent Estate Law. The determination of the tax apportionment by a definite formula has been made by the Legislature. (*Matter of Mollenhauer,* 257 App. Div. 286, 288; *Matter of McManamy,* 172 Misc. 392.)

In the *Matter of Kaufman* (*supra*) Surrogate DELEHANTY said (p. 443) : " The objective sought to be accomplished by the section [section 124, Decedent Estate Law] is the equitable allocation of the burden of the taxes among all of the parties actually affected by that burden. The section does not envisage piecemeal applications of individuals for the fixation merely of their separate rights but rather a comprehensive survey of the tax problem and a comprehensive determination of the tax liabilities of all the parties interested in the property taxed. The allocation is an integral whole."

The burden of establishing a reason for nonapportionment, which rests upon those who contend for that result (*Matter of Kaufman, supra*), has not been sustained.

This court does not find in the testator's will any expression to free any of the remainder legatees from the tax burden and holds that the statutory direction for the apportionment of the estate taxes is applicable to this estate.

If any further discussion were required to demonstrate that the testator intended to have section 124 apply to the specific bequests of personal property, the Wrynn legacy and the general legacies in remainder, reference need only be made to the provisions of the trusts of $5,000 and $10,000, where he specifically states that they be set up undiminished by any tax or other charge. If testator had desired that the general legacies payable out of the remainder were not to bear any part of the tax and that the same were to be paid out of the residue of the remainder payable to the county of Miami, Ohio, he could have made like provision to relieve such legacies from sharing any burden of the taxes.

Under established principles of equity, equality of contribution to the burden of the tax requires that the charitable remainders pay their proportionate taxes computed only on that portion of their interests which were included for taxation, giving them credit for the benefits which the Tax Law grants to charitable gifts and that the individual remaindermen pay their

proportionate share on the basis of their entire legacies since no exemption was allowed on them in computing the net taxable estate.

The trustee, in its accounting, proposes an apportionment which fails properly to allocate the taxes on the McGinley trust and appears to be at variance with the correct method of giving credit for the charitable deductions.

Accordingly, in applying the law, as aforesaid, to the figures, the taxes should be apportioned as follows:

The tax of $1,085.16 apportioned to the McGinley trust is to be charged against and to be paid out of the residue of the remainder.

The State tax of $32,185.33 and the Federal tax of $123,075.51, chargeable against the residuary trust, are apportioned as follows: (*Matter of Crossman,* New York Law Journal, Oct. 31, 1935, pp. 1599, 1600 [FOLEY, S.].) The numerator of each fraction is the amount which each beneficiary receives, less any exemption or deduction allowed by the State and Federal authorities in the fixation of the net tax applicable to it, *viz.,* in the case of the two Brooklyn charities, the numerator, for State tax purposes, is $4,934 each, and for Federal, $5,317.64 each, not $10,000 each. For the county of Miami, Ohio, the numerator, for State tax is $641,048.42, not $1,338,048.42, and for Federal, $711,526.23, not $1,338,048.42. As for the individual remainders of $75,000 each to Coolidge and Steil, the numerator is $75,000 in each instance.

The denominator of each fraction is the total of the remainder available for distribution less the charitable exemptions or deductions, which for State tax purposes is $800,916.42 and for Federal, $872,161.51.

The State and Federal quotients when respectively multiplied by $32,185.33, representing balance of State tax chargeable against the residuary trust, and $123,075.51, being the Federal tax charged against said trust, result in the following apportionment: Coolidge and Steil legacies are each to be charged with $3,013.92 State and $10,583.66 Federal, or a total of $13,597.58 each; Brooklyn Institute of Arts and Sciences and the Orphan Asylum Society of the City of Brooklyn are each to be charged with $198.27 State and $750.40 Federal, or a total of $948.67 each; and the county of Miami, Ohio (Dettmer Hospital) $25,760.95 State and $100,407.39 Federal, or a total of $126,168.34, to which will be added, as above, the McGinley tax of $1,085.16, or a total of $127,253.50.

Submit decree, on notice, in conformity herewith.