Abraham N. Geller, J.
This motion has been made for reconsideration of my determination (reported at 43 Misc 2d 84) holding invalid the attempted exercise by the donee of the power of appointment of this inter vivos trust fund and directing that distribution thereof be made as alternatively provided in the trust indenture.
The procedural objection — that a motion for reconsideration must under CPLR 4405 be made within 15 days after decision— is not applicable. That time limitation applies only where there has been a trial. The proceeding before the court was in the form of a motion for a determination of the validity of the exercise of the power of appointment and for settlement of an account. There is no stated time limit for a motion to reconsider a determination of a motion. Moreover, it would appear that under CPLR, even in the case of a trial, the court in a nonjury case may on its own initiative set aside its decision (CPLR 4404, subd. [b]) and has power to grant relief upon posttrial motion in any case up to the time of argument or submission of an appeal from the final judgment. Here no order has been entered and the application is for reconsideration of an interim determination set forth in a memorandum opinion. It seems clear that the court has power to reconsider and, if necessary to effectuate a just result, to set aside its prior determination.
*1034 This application is made by the trustee under the will of the donee of the power. Since the original decision the estate tax return on donee’s estate has been filed, although not as yet audited, and it is advanced as supporting the applicant’s motion. While such return may be helpful for illustrative purposes, the court’s present determination is not based thereon. However, a fuller exposition in the briefs submitted on this application of the estate tax problem, particularly of the tax apportionment rule laid down in cases cited to the court under general tax payment clauses similar to this donee’s, has led to a further review of the applicable statutes and decisions. I have concluded that my original determination was based on an erroneous premise and that there was a valid exercise of this power of appointment.
The pertinent facts are briefly summarized. In 1952 settlor, then a resident of this State, made this trust indenture giving his niece Julia a power of appointment of said fund to such persons or corporations “ other than and excluding the estate of the said Julia M. Ball, her creditors and the creditors of her estate as the said Julia M. Ball will appoint in her last Will and Testament; and in default of such appointment,” directing distribution of the fund to his distributees. He died in 1955 and Julia died in 1963. Her will, probated in the State of Pennsylvania, expressly declared her intention to exercise this power of appointment under the residuary clause of her will. After making some minor bequests she provided for a trust of all the remainder of her estate, including specifically a testamentary trust fund under her uncle’s will over which she had a general power of appointment and this inter vivos trust fund, and directed the trustee to pay from said residuary estate substantial legacies to charities and individuals, the “balance” to be divided into three shares in trust for a niece and two nephews.
She then directed that all estate taxes “ that may become payable by reason of my death with respect to the property comprising my gross estate for tax purposes” be paid “out of the residue of my residuary estate established after the payment ’ ’ of all legacies.
There is no question here as to the Buie against Perpetuities. The niece and nephews, for whom separate trusts were provided under the residuary clause, were in being in 1952 when donee’s trust was created.
The only question is whether donee violated or exceeded the restrictions imposed upon her power of appointment under the *1035 trust indenture, i.e., whether she directed that said inter vivos trust fund be used for the benefit of her estate, her creditors or the creditors of her estate. Since under the Estate Tax Regulations a power of appointment exercisable to meet the estate tax or taxes enforcible against the estate is included within the meaning of a power of appointment exercisable in favor of decedent donee’s estate, creditors or creditors of the estate, the issue here is narrowed down to whether this trust fund was either itself made subject to estate tax or directed to be applied toward payment of her estate taxes by Julia’s manner of exercise of that power of appointment.
The court has upon reconsideration now concluded: (1) that this trust fund could never be made subject to estate tax by anything attempted to be done by the donee; and (2) that the general direction to pay the estate tax out of the residue of her residuary estate is to be construed under the apportionment statute and decisions as imposing the tax only upon that portion of the residue as is subject to tax (her probate estate and the testamentary fund over which she had general power of appointment) without any allocation to that portion thereof which is not subject to tax (this inter vivos trust fund).
As to (1): In 1951 the tax statute dealing with powers of appointment was attempted to be simplified. The present statute divides powers for purposes of taxation to those created prior to October 21, 1942 and subsequent thereto. With respect to those created after October 21,1942 a general power of appointment (defined as one “ exercisable in favor of the decedent, his estate, his creditors or the creditors of his estate ”) is includible in the value of the gross taxable estate of donee if he had such general power at time of his death, regardless of whether he exercised it or not; while a nongeneral (commonly referred to as special) power of appointment (as here explicity provided by the settlor) is not includible in donee’s gross taxable estate (with one possible exception applicable apparently-only to tire State of Delaware under its distinctive' ruM-relating to perpetuities— see 5A Jessup-Redfield, ’Surrogates Law "and Practice, pp. 1017-1018). Thus, this trust fund could not'be included in Julia’s gross estate .for■.<tax purposes ánd could not be made subject to tax-ih her- estate because settlor had made it a non-general poweruot exercisable in favor of her estate, her creditors or the' creditors of her estate, and this regardless of what Julia might do at any time or declare in any instrument.
As to (2): The remaining question is whether, though not itself taxable, this trust fund could under the terms of Julia’s *1036 will be applied toward payment of her estate tax and, therefore, be deemed violative of the restriction imposed by settlor. Her general tax payment clause seemingly includes or blends this trust fund together with her own estate and the testamentary general power of appointment in the residue of her residuary estate, out of which the estate taxes are to be paid.
The answer to that question lies in the tax apportionment statute and relevant decisions (and it appears that there is no essential difference between the statutes and decisions on this point in New York and Pennsylvania). Section 124 of the Decedent Estate Law provides that the amount of the tax “ with respect to any property required to be included in the gross tax estate of a decedent * * * except in a case where a testator otherwise directs in his will” shall be equitably prorated “ among the persons interested in the gross tax estate ”.
Only that amount included in the taxable estate must bear its proportionate share of the taxes pursuant to the provisions of section 124 and no portion may be allocated to the beneficiaries of any property which is not includible in the taxable estate (Matter of Mayer, 174 Misc. 917). Section 124 refers solely to an allocation of the burdens upon property actually taxed (Matter of Kaufman, 170 Misc. 436).
Here Julia sought to exonerate all preresiduary gifts and bequests as well as the legacies to be first paid from the residuary estate from payment of any estate taxes and apportionment thereof, directing payment to be made out of the residue of her residuary estate. A somewhat similar tax payment clause was construed in Matter of Shubert (10 N Y 2d 461). It was there pointed out that the will did not contain a direction against apportionment of estate taxes within the residuary estate and that, in the absence of an unambiguous direction against intraresiduary apportionment, the statutory mandate calling for apportionment was to be applied to the elements comprising the residuary estate. The court cited numerous cases to the effect that “ a general direction that all estate or inheritance taxes be paid out of the residue is not the equivalent of a direction against proration within the residue itself ” (p. 471).
Thus, any portion of the residue which is not required to be included in the gross tax estate of a decedent may not, under such a general direction, be charged with any portion of the estate tax payable with respect to decedent’s gross tax estate. Actually, Julia expressly referred in her tax payment clause to “ any such tax that may become payable by reason of my death with respect to the property comprising my gross estate for tax *1037 purposes.” Since the inter vivos trust fund was not includible in her gross estate for tax purposes, no portion of her estate tax could be allocated to it under her tax payment clause.
Although that clause could have been drawn so as to clearly and explicitly exclude this trust fund from being applied in payment of her estate taxes and remove any doubts, the court has determined upon this review of the problem that that is the legal effect of the clause in her will. Declaration of the validity of her exercise of this power carries out both her expressed intention and the intention of the settlor to provide her with a power of appointment not taxable in her estate.
Now, regarding the account, the guardians’ reports find it to be unobjectionable and no objections have been filed by any party. It is settled and allowed.