In the Matter of the Will of GEORGE BLUMENTHAL, Deceased.

Surrogate's Court, New York County, September 22, 1943.

*Howard Lehman, Joseph Solomon, Leo Gottlieb* and *John L. Gray, Jr.,* for Carl J. Schmidlapp and another, as executors, petitioners.

*Frederick Sheffield* and *Henry Cassorte Smith* for Mary A. B. Robertson and another, respondents.

*Henry Epstein, Wolfgang S. Schwabacher* and *Jack Perlman* for H. Walter Blumenthal, respondent.

*Charles E. Hughes, Jr.,* and *Cornelius C. Webster* for Mount Sinai Hospital of the City of New York and others, respondents.

*Thomas W. Kelly* for Henry Blumenthal and another, respondents.

*Leon Schaefler, Frank C. Wachsmith* and *Edward Kurland* for Fifth Avenue Bank of New York as trustee, respondent.

*James L. Duncanson,* attorney designated by Alien Property Custodian to represent Count Stanislas de Castellane and others, persons within enemy-occupied territory.

*Jacob Florea,* special guardian for Ann Gilbert.

*Laurence D. Kieran,* special guardian for Hans Lowenthal.

FOLEY, S. In this application for the construction of the will and for instructions as to the method of charging the Federal and State estate taxes, by my prior decision it was determined that all of the estate taxes must be prorated equitably against

the testamentary beneficiaries other than the charities and against the donees by *inter vivos* transfers under the provisions of section 124 of the Decedent Estate Law. (*Matter of Blumenthal*, 180 Misc. 895.)

In the petition in the proceeding six different questions were originally presented for determination. The first and second were disposed of by my decision referred to above. Four other questions remain for disposition.

Upon the third question counsel for the widow attempt to reargue my prior determination decreeing allocation. The distribution directed by the testator in the residuary clause provided for an aggregate of 26% to be given the charitable legatees and 74% to noncharitable beneficiaries.

The widow and others who join in her contentions now seek to have all of the taxes paid as a primary deduction from the entire residue. By that method the charitable legatees would suffer a diminishment of their true interests under the will. These contentions are therefore overruled. The terms of section 124 provided that, in making the proration, " allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act for the purpose of arriving at the value of the net estate ".

It is immaterial whether the charitable bequests constitute an exemption or deduction although the latter term would seem to be more accurate in describing charitable benefits in both the Federal and State statutes. [U. S. Code, tit. 26, § 812, subd. (d); Tax Law, § 249-s, subd. 3.]

In the computation of the distribution of the tax, the interest of each person, whether pecuniary legatee, specific legatee or residuary legatee, and whether charitable or noncharitable, must be fixed in money under the terms of the will or under a nontestamentary transfer. Outright gifts or trusts for exclusive charitable purposes must be excluded since they were deducted in the ascertainment of the net estate upon which the taxes were computed and fixed. Only by this method may an equitable proration be effectuated as to the noncharitable beneficiaries and charities protected under the legislative plan.

I accordingly hold upon the third question that the estate taxes may not be deducted from the entire residue and further hold that the percentages of such entire residue must first be computed and the taxes apportioned against only the noncharitable beneficiaries. (*Matter of Starr*, 157 Misc. 103; *Matter of Dettmer*, 179 Misc. 844.) My decision in *Matter of Weinstein* (N. Y. L. J., Mar. 16, 1940, p. 1213, col. 2) is in no way applicable

to the facts and the terms of the will in the present proceeding. Necessarily the Surrogate is dealing with the taxes on the residuary estate. All other beneficiaries, whether testamentary or nontestamentary, must necessarily be brought into the allocation.

As to the fourth question the Surrogate holds, pursuant to the terms of section 124, that the estate taxes on the legal life estate in certain tangible property given by the testator to his widow under article twenty-fifth of the will must be charged against the corpus of such tangible personal property. It is immaterial that the remainderman is a charity. The terms of section 124 which direct that the proportional share of the taxes shall be charged out of the principal of the fund or property are mandatory. (*Matter of Starr, supra; Matter of Dettmer, supra.*) The amount thereof may be paid to the executors in money in reimbursement of the executors or, by arrangement of the parties, sufficient of the personal property may be sold and the proceeds applied to the amount of such taxes.

Upon the fifth question the Surrogate holds that the taxes on the annuities must be amortized out of the periodic amounts due the respective annuitants. The explanatory note which was before the Legislature at the time of the enactment of section 124 did not confine the amortization of the tax to a restricted class of annuities or distinguish between the older form of the common-law annuity and the modern form of such a benefit. The term " annuity " was significantly used by Mr. Blumenthal, the testator, in his will.

In the case of a benefit payable by way of income to the *cestui* of a trust, or an advantage derived by a legal life tenant, the terms of section 124 exempt either of such beneficiaries from the direct charge for the proportional part of the taxes. The entire burden is placed by the terms of section 124 upon the principal of the fund. On the other hand, as to an annuity, since the gift was outright in form, although postponed over a series of years, it was made subject to a direct charge for the proportional part of the taxes. This rule, which had been applied previous to the enactment of the section in *Matter of Tracy* (179 N. Y. 501), was expressly referred to in the explanatory note to the legislative measure. Similar interpretation has been given to the section in its relation to annuities by decisions subsequent to its effective date (*Matter of Starr, supra; Matter of Matthews,* 164 Misc. 578, revd. upon other grounds, 255 App. Div. 80 and 279 N. Y. 732), and by my dictum in *Matter of Brown* (N. Y. L. J., Mar. 13, 1943, p. 1005, col. 5).

The taxes are therefore directed to be paid out of the funds set aside for the payment of annuities and amortized out of the respective annuities.

The sixth question involves a situation which has arisen by the possibility of the inclusion within the net estate by the taxing authorities of certain gifts *inter vivos* upon the theory that such transfers were made in contemplation of death. Mr. Blumenthal paid certain gift taxes on these transfers. It is claimed by the donees that the gift tax credits should be apportioned solely to them. In opposition to this claim other beneficiaries assert that such credits should be deducted from the total amount of the Federal estate tax and thereby apportioned to all of the persons sharing by any form of transfer. The Surrogate sustains the latter claim. These *inter vivos* transfers may be subjected to inclusion within the gross estate if they are hereafter found by the taxing authorities to have been made in contemplation of death. In that event the amount of the taxable estate will be increased and the burden of the additional share of taxes at higher rates will be cast upon persons who derive no benefit from such *inter vivos* tranfers. In the consideration of questions under section 124, the courts have consistently followed the determination of the taxing authorities. (*Matter of Mayer,* 174 Misc. 917; *Matter of Kaufman,* 170 Misc. 436; *Matter of Ryle,* 170 Misc. 450.) Where a tax has been assessed by them against an *inter vivos* transfer which has been decided to have been made in contemplation of death, the actual situation is considered and perversion of the true nature of the transaction may not be resorted to. The Federal Government has treated the gift tax here as a payment made by the donor on account of the general liability of his estate for all inheritance taxes. Under these circumstances equity requires that the credits should redound to the advantage of the entire group of parties charged with the burden of the tax and not be confined to the donees only.

An analysis of the decision, *Irving Trust Co.* v. *Hitt* (Sup. Ct., Westchester Co., N. Y. L. J., July 25, 1940, p. 200, col. 6), claimed to be applicable in favor of the *inter vivos* donees, shows that an entirely different state of facts was involved there and an equitable apportionment was applied in the allocation of the taxes in favor of those who had received no benefits and proportionally against those who did receive them.

Submit decree on notice construing the will and directing the apportionment of the taxes in accordance with this and the prior decision of the Surrogate.