JOHN L. CRAIG, PERSONAL REPRESENTATIVE OF THE ESTATE OF HERMAN F. DETLEFS, DECEASED, APPELLANT, V. WAYNE KILE AND WILLENE KILE, APPELLEES, THOMAS DETLEFS ET AL., INTERVENORS-APPELLANTS.
JOHN L. CRAIG, PERSONAL REPRESENTATIVE OF THE ESTATE OF HERMAN F. DETLEFS, DECEASED, APPELLANT, V. LAVERNE L. QUADHAMER AND SHIRLEY M. QUADHAMER, APPELLEES, THOMAS DETLEFS ET AL., INTERVENORS-APPELLANTS.

329 N.W.2d 340

Filed January 14, 1983. Nos. 81-760, 81-824.

Rodney A. Osborn of Person, Dier, Person & Osborn, for appellant Craig.

Graten D. Beavers and Knapp, Mues, Sidwell, Anderson, Shofstall & Beavers, and Daniel M. Placzek and Luebs, Dowding, Beltzer, Leininger & Smith, for intervenors-appellants.

Jacobsen, Orr & Nelson, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

These two actions were originally filed by the conservator of Herman F. Detlefs to set aside certain deeds made by Detlefs during his lifetime. One deed conveyed title to the northeast quarter of Section 29, Township 5 North, Range 15 West of the 6th P.M., Kearney County, Nebraska, to Wayne Kile, and a second deed conveyed title to the west half of Section 22, Township 4 North, Range 14 West of the 6th P.M., Franklin County, Nebraska, to LaVerne L. Quadhamer and Shirley M. Quadhamer, husband and wife. Detlefs reserved a life estate in each tract of land. Before the actions were completed, Detlefs died and the actions were revived by John L. Craig as personal representative of the estate of Herman F. Detlefs, deceased. Because of the location of the real estate, the Kile action was filed in Kearney

County, Nebraska, and the Quadhamer action filed in Franklin County, Nebraska. However, by stipulation of the parties, the cases were consolidated for trial. The intervenors Thomas Detlefs and Fred Detlefs are the surviving brothers of Detlefs, and the intervenors Thomas G. Schmidt and Bernice L. Ross are a nephew and niece of Detlefs and the children of Detlefs' deceased sister. Following trial to the court, the court entered judgment in favor of Kile and Quadhamer and against the appellant Craig and intervenors-appellants, in effect finding that the deeds executed by Detlefs conveying land to Kile and Quadhamer were not the result of either undue influence exerted upon Detlefs or due to the fact that Detlefs was mentally incompetent when the deeds were executed. In reviewing this appeal, we are mindful that as an equity action we are required to examine the record de novo and reach our own independent conclusions without regard to the conclusions reached by the District Court. *Schuller v. Schuller,* 191 Neb. 266, 214 N.W.2d 617 (1974); *McDonald v. McDonald,* 207 Neb. 217, 298 N.W.2d 136 (1980).

These are never easy cases to review, and one must be extremely cautious that in reviewing the record isolated pieces of evidence are not taken out of context. We recognize further that if there is an irreconcilable conflict in a material issue, the Supreme Court will, in determining the issue, consider the fact that the trial court had the opportunity to observe the witnesses and their manner of testifying. *In re Estate of Saathoff,* 206 Neb. 793, 295 N.W.2d 290 (1980).

We have now carefully examined the record and, based upon our own examination of the record, conclude, as the trial court did, that the deeds were not executed by Detlefs at a time when he was incompetent, nor were they the result of undue influence. For that reason, we believe that the judgment of the trial court must be affirmed.

The record discloses that Detlefs, at the time he executed the two deeds on April 11, 1978, was an 80-year-old bachelor living in Upland, Nebraska. He had never married and his only surviving heirs at law were his two brothers, his niece, and his nephew, all of whom Detlefs apparently thought had done quite well and were not in need of assistance from him. As a matter of fact, Detlefs had, prior to conveying the property to Quadhamer and Kile, executed several wills and several codicils. In each will he acknowledged that his sole surviving heirs were his brothers and his niece and nephew, but that "All of them are well provided for and therefore I have concluded that it is advisable for me to make token bequests to each of them . . . ." As a result thereof, Detlefs made certain specific bequests to his family, to several friends and neighbors, including Quadhamer and, later, Kile, and then left the balance of his estate to various charities named in the will. If anything can be gleaned from the various wills and codicils, it would seem to be that Detlefs did not intend to make the intervenors the recipients of the bulk of his estate, and that annually he changed his mind about how his property should be devised upon his death. While this record does establish a picture of a man inclined to change his mind, it does not establish a man either incompetent or easily subject to another's will.

The record discloses that Quadhamer and Kile had known and been friends of Detlefs for a number of years prior to April 11, 1978, and both of them performed personal tasks for Detlefs for which they apparently received little or no compensation. These requests might consist of taking him shopping or to the doctor or driving him to South Dakota to visit his farmland. Detlefs conceded in his deposition taken prior to his death that Kile and Quadhamer were friends of his and performed a number of tasks which he asked them to do. He further conceded that neither Quadhamer nor Kile ever asked him to

convey land to them. Specifically, Detlefs said: "Q. Did Mr. Kile ever ask you to deed any real estate to him? A. No, that I recall. Q. Did Mr. Quadhamer ever ask you to deed real property to him? A. Ask me what? Q. Did he ever ask you to give him some real estate? A. No, they never bothered me about that. . . . Q. Did Laverne Quadhamer or Wayne Kile make any promise to you in order to get you to give them the deed? A. No, they didn't."

While there is some conflict in the evidence, one can find from the evidence that in January of 1975 Detlefs requested Quadhamer to assist him in retaining the services of a lawyer in order to draft a new will. Quadhamer made inquiry of coworkers about attorneys in the Kearney area and was referred to Kent Schroeder, an attorney practicing in Kearney. Subsequently, Mr. Detlefs was taken by Quadhamer to Schroeder's office where, after a conversation between Schroeder and Detlefs, a will was prepared. Subsequently, two codicils, a limited power of attorney, and the two deeds involved herein were prepared by Schroeder for Detlefs. Additional wills and codicils were prepared by attorney William Meier of Minden, Nebraska.

The evidence discloses that in late March or early April of 1978 Detlefs conferred with Schroeder with regard to the possibility of deeding the parcels of real estate involved herein to Quadhamer and Kile to avoid the possibility of an attack on his will. He had earlier provided in either his will or a codicil that the property in question should pass to Quadhamer and Kile upon his death. The evidence discloses that Schroeder requested Quadhamer to leave the room and then discussed at some length with Detlefs the various possibilities, attempting thereby to determine if the decision to deed the property was voluntary on Detlefs' part. The appellants argue that Quadhamer's influence in this matter is clearly established by reason of a note in one of Schroeder's

files indicating that Quadhamer had called Schroeder's secretary to tell her that Detlefs wanted to convey the property to Quadhamer and Kile but reserve a life estate. However, when one examines the entire record one finds that reserving a life estate was one of the possibilities which Schroeder had discussed with Detlefs and which Detlefs was asked to think about and then advise Schroeder. The evidence discloses that it was not uncommon for Detlefs to have Quadhamer make telephone calls for him. Therefore, the evidence concerning the note is not sufficient to establish by clear and convincing evidence that the conveyance was the result of undue influence as alleged by the appellants.

The evidence further discloses that the deeds were then drafted by Schroeder, and Detlefs came back to his office to execute them. Schroeder was not present in the office, but his secretary testified that she reviewed the deeds in detail with Detlefs and asked whether he understood what he was doing. He indicated that he did. He then executed the deeds and asked that they be delivered to the grantees.

On April 24, 1978, on the advice of attorneys William Meier and Jesse Adkins, Detlefs requested the appointment of a conservator, and his petition thereafter was granted. His conservator subsequently instituted these proceedings seeking to have the deeds set aside.

As we indicated at the outset, cases of this nature are not easy to resolve. Nevertheless, there are certain specific standards required to be met. There would be no certainty to conveyances if all that an individual had to do after conveying property was to have a second thought and seek to have the conveyance set aside on the basis that he had been unduly influenced to execute the deeds. In *McDonald v. McDonald,* 207 Neb. 217, 220-21, 298 N.W.2d 136, 138 (1980), we set out the various factors and elements necessary to establish a case of undue influence, saying: " ' "The elements necessary to be estab-

lished to warrant the rejection of a written instrument on the ground of undue influence are: (1) That the person who executed the instrument was subject to undue influence; (2) that there was opportunity to exercise undue influence; (3) that there was a disposition to exercise undue influence for an improper purpose; and (4) that the result was clearly the effect of such undue influence." ' "

We made it clear, however, in the case of *In re Estate of Saathoff,* 206 Neb. 793, 295 N.W.2d 290 (1980), that it is not mere influence that makes a conveyance unlawful but *undue* influence as established in the law. In *Saathoff, supra* at 799, 295 N.W.2d at 295, quoting from the case of *Kolc v. Krystyniak,* 196 Neb. 16, 241 N.W.2d 348 (1976), we said: " '[The] undue influence which will void a . . . (gift) is an unlawful and fraudulent influence which controls the will of the donor.' " Furthermore, in *Saathoff, supra* at 799, 295 N.W.2d at 295, we said: " 'The court, in examining the matter of whether a deed was procured by undue influence, is not concerned with the rightness of the conveyance, but only with determining whether it was the voluntary act of the grantor. The fact that the grantor has others who are proper subjects to receive his bounty can be considered by the court only as it bears upon the validity of the conveyance.' " See, also, *Rule v. Roth,* 199 Neb. 746, 261 N.W.2d 370 (1978). The mere fact that there are living relatives who are denied property in favor of friends is not sufficient to set aside a conveyance. "In order to set aside an instrument or instruments . . . for want of mental capacity on the part of the person executing such instruments, the burden of proof is upon the party so asserting to establish that the mind of the person executing such instruments was so weak or unbalanced when the instruments were executed that he could not understand and comprehend the purport and effect of what he was doing." *Dunbier v. Rafert,* 170 Neb. 570, 589, 103 N.W.2d 814, 827

(1960). See, also, *McDonald v. McDonald, supra.* Furthermore, we have previously said that mere suspicion, surmise, or conjecture does not warrant a finding of undue influence, but there must be a solid foundation of established facts on which to rest the inference of its existence. This is particularly true where the parties are well aware of the existence of the contested deed shortly after its execution. See *Zych v. Zych,* 183 Neb. 708, 163 N.W.2d 882 (1969).

Intervenors-appellants rely, to a large extent, upon the existence of Detlefs' thyroid condition as the basis for their allegation that he was susceptible to undue influence and was not competent at the time that he executed the deed. However, when one reads his deposition, one is inclined to reach a different conclusion. Detlefs was able to sufficiently describe what took place and to even suggest what the medical cause of his lack of capacity was due to—factors which one truly incompetent is not able to do. Further, Detlefs' physician was not able to testify that, in his opinion, on the day on which the deeds were executed and conveyed Detlefs was either incompetent or acted as a result of undue influence. He indicated that he might be somewhat lethargic or might have some difficulty in reading. At best, however, these were suppositions and fall short of meeting intervenors-appellants' burden. There was simply insufficient evidence to establish by clear and convincing evidence that the action taken by Detlefs in conveying the land to Quadhamer and Kile was not intended by him.

Appellants seek to establish that Schroeder was Quadhamer's lawyer and therefore Detlefs was without independent advice. The record, however, simply does not support that contention. According to Schroeder's own testimony, he had not previously represented Quadhamer and, in fact, the only other work he ever did for Quadhamer was the preparation of a will for Quadhamer and his wife after Detlefs prepared a will leaving the property to

Quadhamer. The record is clear that Schroeder did act as Detlefs' attorney and did carefully go over with him the various actions, satisfying himself that Detlefs understood what he was doing and that he desired to accomplish the results obtained. In *McDonald v. McDonald,* 207 Neb. 217, 223, 298 N.W.2d 136, 139 (1980), we said: " 'The mere fact that the grantee procures an attorney to prepare the deed does not prove that the deed was obtained by improper means.' "

Finally, appellants argue that evidence showing that Quadhamer paid Schroeder's bill as well as the revenue stamps and the filing costs indicates that this was all planned by Quadhamer and Kile and totally unknown by Detlefs. The record simply will not support that claim. The attorney fee for both deeds was $25 and the revenue stamps paid, at least on the Quadhamer property, were $.55. In view of the fact that Detlefs had just given to Quadhamer and Kile real estate of substantial value, one would not be surprised to find that they did not ask Detlefs to reimburse them for these minor costs. While one may question the wisdom of the grantor in conveying his property to Quadhamer and Kile, one cannot say from the evidence that the appellants have established by clear and convincing evidence that at the time the deeds were executed Detlefs was incompetent or that the conveyance was as a result of undue influence.

As a further basis for reversal, intervenors-appellants argue that the trial court erred in refusing to permit them to amend their petition of intervention to add two alleged reasons for setting aside the deeds, to wit, (1) fraud and mistake, and (2) failure of delivery. The trial court was not in error in denying to intervenors their request to amend the petition in intervention for several reasons. In the first instance, an intervenor may not change the issues but must accept the case as the intervenor finds it. *Drainage District v. Kirkpatrick-*

*Pettis Co.,* 140 Neb. 530, 300 N.W. 582 (1941). Furthermore, permitting or refusing amendments to pleadings is a matter within the sound judicial discretion of the trial court, and unless it is made to clearly appear that the court has abused this discretion and the party has thereby been deprived of an opportunity to make his case or defense, the Supreme Court will not interfere. *State ex rel. Sorensen v. Farmers State Bank,* 127 Neb. 139, 254 N.W. 728 (1934); *Omaha & R. V. R. Co. v. Moschel,* 38 Neb. 281, 56 N.W. 875 (1893). In the instant case the record discloses that even though fraud and mistake and failure of delivery were not made specific issues by the pleadings, the matters were gone into at trial and there was evidence that the deeds were ordered delivered by Detlefs. The issues of fraud and mistake were gone into under the issue of undue influence, and we therefore do not believe that the trial court erred in denying to the intervenors their request to amend.

A review of the entire record discloses that there was simply insufficient evidence to establish by clear and convincing evidence that the deeds were executed under either undue influence or while the grantor was incompetent, and the judgment of the trial court should be affirmed.

AFFIRMED.

CLINTON, J., not participating.