IN RE ESTATE OF HERMAN F. DETLEFS, DECEASED.
LAVERNE QUADHAMER ET AL., APPELLANTS AND
CROSS-APPELLEES, V. JOHN L. CRAIG, PERSONAL REPRESENTATIVE
OF THE ESTATE OF HERMAN F. DETLEFS, DECEASED, ET AL.,
APPELLEES AND CROSS-APPELLANTS.
418 N.W.2d 571

Filed February 5, 1988.   No. 86-224.

Patrick J. Nelson of Jacobsen, Orr, Nelson & Wright, P.C., and Douglas M. Deitchler of Baylor, Evnen, Grimit & Witt, for appellants.

Charles E. Wright of Cline, Williams, Wright, Johnson & Oldfather, Jesse T. Adkins of Adkins and Wondra, and Rodney A. Osborn of Person, Dier, Person & Osborn, for appellees Craig and University of Nebraska Foundation.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

WHITE, J.

This is an appeal from the district court for Franklin County. The district court upheld an order of the county court for Franklin County which apportioned federal estate taxes, and interest thereon, among persons interested in the estate of Herman F. Detlefs.

Appellants, LaVerne Quadhamer, Shirley Quadhamer, and Wayne Kile, assign three errors. First, appellants challenge the method used by the trial court to compute apportionment shares of the estate tax. Second, it is alleged that the trial court erred in apportioning interest due on the federal estate tax among the interested parties. Finally, appellants allege that the county court lacked jurisdiction to enter a money judgment,

with interest thereon, for the amounts of federal estate tax and interest apportioned to each interested party.

This case comes before this court with a 10-year history of conflict involving the parties. Herman Detlefs' attempts to dispose of his estate, by will and through inter vivos land transfers, have been fraught with years of court battles involving several distinct issues. In 1978 Detlefs deeded two parcels of real estate to his friends (appellants in this case) the Quadhamers and Wayne Kile. Detlefs retained a life estate in both parcels of land. Within 2 weeks, on advice of attorneys, Detlefs requested appointment of a conservator. The request was granted, and John L. Craig, Detlefs' banker, was appointed. Within a few months the conservator filed an action in equity in the separate district courts where each parcel of land was located to have the deeds set aside due to undue influence and lack of mental capacity.

Detlefs died on February 4, 1980, prior to any determination on the validity of the land transfers. The actions were revived by John Craig, as personal representative of Detlefs' estate. With the land transfer litigation pending, court battles began, involving the probate of Detlefs' wills. The personal representative attempted to probate Detlefs' 1979 will. Detlefs' heirs, as well as the Quadhamers and Kile in a separate action, objected to the probate of the 1979 will. The Quadhamers and Kile filed for formal probate of Detlefs' 1975 will, which included two codicils. The county court overruled the objections and admitted the 1979 will to formal probate. In July and August of 1980, both Detlefs' heirs and the Quadhamers and Kile, in separate actions, appealed the county court's order to the district court.

On September 25, 1981, the district courts for Kearney and Franklin Counties upheld the land transfers and deeds from Detlefs to the Quadhamers and Kile. The estate's personal representative then appealed to the Supreme Court. This court affirmed the district courts' decisions by upholding the land transfers in *Craig v. Kile*, 213 Neb. 340, 329 N.W.2d 340 (1983).

Amidst the controversies surrounding Detlefs' land transfers and his will loomed one of the two certainties in life: taxes. Neither Detlefs nor his conservator filed a gift tax return on the

land transfers to Quadhamers and Kile during Detlefs' lifetime. After Detlefs' death, the estate and the transferees were at odds over who was liable for payment of gift taxes if, in fact, the inter vivos transfers were upheld.

The facts pertinent to the estate taxes are of particular importance to the case at bar. A federal estate tax return, if required, must be filed within 9 months after death. I.R.C. § 6075 (1982). There are provisions for an extension if such is necessary. I.R.C. § 6081 (1982). The record in this case reveals that the attorney for the estate's personal representative filed a U.S. estate tax return (form 706) in November of 1981, 1 year 9 months after Detlefs' death. The attorney's testimony indicates that two extensions were obtained prior to the filing. The return filed by the estate declared that no estate taxes were due the IRS. According to the testimony, the "return was filed on the basis that the . . . transfers [of land to Quadhamers and Kile] would be voided and all of that property would pass to the residuary beneficiaries, being the 11 charities [mentioned in Detlefs' 1979 will]."

Shortly after this court's decision in *Craig v. Kile, supra*, upholding Detlefs' inter vivos land transfers, the IRS audited the federal estate tax return submitted by the personal representative. In June 1983, the IRS notified John Craig of an adjustment in the estate's tax liability. The audit resulted in an increase from $0 due to $412,487.61 due. The estate was notified of its right to appeal this assessment, either within the IRS or in a court proceeding. The personal representative, along with counsel for one of the charitable residuary beneficiaries, chose to appeal the assessment within the IRS. Pursuant to this reassessment, the estate tax liability decreased to $223,332.25, not including interest. This final assessment was dated October 2, 1984. On October 22, 1984, the estate paid the estate tax, as well as the gift tax due on the land transfers. On or about November 1, 1984, the estate paid the interest due on the gift tax and the estate tax. The final assessments paid by the personal representative amounted to $223,332 in estate tax and $115,163 in interest thereon. The gift tax totaled $98,680, and $68,251 in interest.

The record reveals that shortly after the first IRS audit

resulting in an increased estate tax liability, the personal representative petitioned the county court for apportionment of federal estate taxes and determination of Nebraska inheritance tax. The Quadhamers and Kile, as well as Detlefs' heirs, filed separate objections to the petition for apportionment. The parties objected to the apportionment as premature due to the pending appeals in district court challenging the probate of Detlefs' 1979 will, alleging that the gift tax issue remained unsettled and asserting that the personal representative was still negotiating with the IRS as to the amount of estate tax due. In August of 1983 the county court upheld the objections and stated that the action "should be continued until the testacy or intestacy of the decedent has been determined."

In January 1984, Detlefs' heirs withdrew their district court appeal challenging the probate of the 1979 will. This action was pursuant to a settlement agreement which was filed with and approved by the county court in March of 1984. Following the October 1984 final assessment of federal estate and gift tax, and payment of that tax by the estate, the personal representative filed an amended application for apportionment of federal estate tax. The amended application was filed in January of 1985. In June 1985, the Franklin County Court entered an order which determined Nebraska inheritance taxes due, apportioned the federal estate tax and the interest among the parties interested in the estate, and held that the gift tax and interest thereon was a debt of the estate and thus not subject to apportionment among the transferees (Quadhamers and Kile). Appellants herein, Quadhamers and Kile, appealed the county court order to the district court. On January 30, 1986, the district court upheld, with some modification, the order of the county court, and this appeal followed.

Prior to addressing appellants' assigned errors, it is necessary to establish this court's scope of review in estate tax apportionment appeals. This issue has not been directly addressed in this court's prior decisions concerning Nebraska's apportionment statute, Neb. Rev. Stat. § 77-2108 (Reissue 1986).

Appellees allege that this appeal is governed by the

provisions of Neb. Rev. Stat. § 24-541.06 (Reissue 1985). Thus, the standard of review with respect to apportionment proceedings would be limited to error appearing on the record. It is true that in probate proceedings, as well as in determination of inheritance tax appeals, § 24-541.06 applies, and the Supreme Court's scope of review is limited to error appearing on the record. See, *In re Estate of Massie*, 218 Neb. 103, 353 N.W.2d 735 (1984); Neb. Rev. Stat. § 77-2023 (Reissue 1986). However, for reasons which follow, we do not agree that this court's review in apportionment cases should be limited to error appearing on the record, but, rather, we hold that it is de novo on the record.

First, it is clear that county courts, in exercising exclusive original jurisdiction over estates, may apply equitable principles to matters within probate jurisdiction. *In re Estate of Steppuhn*, 221 Neb. 329, 377 N.W.2d 83 (1985); *In re Estate of Layton*, 207 Neb. 646, 300 N.W.2d 802 (1981). Further, Neb. Rev. Stat. § 24-517 (Reissue 1985) provides that county courts shall have "[a]ll other jurisdiction heretofore provided and not specifically repealed by Laws 1972, Legislative Bill 1032, and such other jurisdiction as hereafter provided by law." County courts have been granted apportionment jurisdiction pursuant to Neb. Rev. Stat. § 77-2112 (Reissue 1986). That statute provides that the "county court of the county wherein the estate of the decedent is being probated shall have jurisdiction *in the probate proceedings* to hear and determine the apportionment and proration of such tax as set out in section 77-2108." (Emphasis supplied.) An apportionment proceeding thus becomes a "matter within [the] probate jurisdiction" of the county court, to which equitable principles may be applied. We are not saying that estate tax apportionment is a probate proceeding; it is merely an ancillary proceeding within the county court's probate jurisdiction as granted by § 77-2112, and thus equitable principles may be applied by the county court to apportionment proceedings. Clearly, Nebraska's apportionment statute envisioned such action by the county courts. Section 77-2108 states that "estate tax . . . shall be *equitably* apportioned and prorated among the persons interested in the estate."

Given that apportionment proceedings are governed by principles of equity, we hold that review of such matters in this court must be de novo on the record.

Appellants' first assigned error alleges that the county court erred in making an apportionment of federal estate taxes without taking into consideration the basis and source of the various credits to which the estate was entitled. Discussion of this issue necessitates a review of the facts relating to the IRS calculations which determined the amount of federal estate tax due.

The IRS audit of 1983 resulted in the fair market value of Detlefs' land transfers to appellants being included in the decedent's gross estate, pursuant to I.R.C. §§ 2031, 2035, and 2036 (1982). On appeal from this audit, the IRS then allowed the $98,680 in gift tax as a schedule K claim (a debt or liability of the estate) pursuant to I.R.C. § 2053 (1982). That same amount was then listed as a credit against the tentative tax figure, presumably in accordance with I.R.C. § 2001(b) (1976), although this point is somewhat unclear. In any event, the gift tax on the prior transfers was explicitly listed as a "credit." It is this credit that appellants seek to their sole benefit.

The county court clearly followed the language of § 77-2108 in computing the proper share to be apportioned to each interested party. The statute provides that "apportionment and proration shall be made in the proportion as near as may be that the value of the property, interest, or benefit of each such person bears to the total value of the property, interests, or benefits received by all such persons interested in the estate . . . ." The county court correctly computed each interested person's share as follows:

$$\frac{\text{Value of Property Received by Interested Person}}{\text{Total Value Received by All Such Persons}} \times \text{Federal Estate Tax} = \text{Apportioned Share of Estate Tax.}$$

Appellants allege that this computation is inequitable in this case because the county court did not consider the source of the estate tax credits allowed by the IRS against the total estate tax liability. They argue that equity requires that interested parties receiving gifts or legacies giving rise to credits on the estate tax

payable should receive the benefit of the credits attributable to their gifts. We do not agree.

As the district court stated on appeal, § 77-2108 requires only that "allowances shall be made for . . . exemptions granted by the act imposing the tax and for any deductions . . . allowed by such act for the purpose of arriving at the value of the net estate." Nowhere does the statute require allowances for *credits* given by the IRS in computing the estate tax liability. Exemptions, deductions, and credits are three separate and distinct statutory creations. Nebraska's apportionment statute does not require courts to allow for credits no matter which property, interest, or benefit generated that credit.

The New York courts have addressed an identical claim to that asserted herein. The New York statute in effect at the time was the model used by Nebraska in drafting our apportionment statute, and contains identical language. The New York courts have held that donees of inter vivos gifts made in contemplation of death are not entitled to have gift tax credits apportioned solely to them. *Matter of Blumenthal*, 182 Misc. 137, 46 N.Y.S.2d 688 (1943), *aff'd mem.* 267 A.D. 949, 47 N.Y.S.2d 652 (1944), *aff'd mem.* 293 N.Y. 707, 56 N.E.2d 588 (1944). As the New York court pointed out, when inter vivos transfers are included in the decedent's gross estate, "the amount of the taxable estate will be increased and the burden of the additional share of taxes at higher rates will be cast upon persons who derive no benefit from such *inter vivos* transfers." 182 Misc. at 141, 46 N.Y.S.2d at 692. In that case, as in the case at bar, the gift tax was paid as a general liability of the estate. "Under these circumstances equity requires that the credits should redound to the advantage of the entire group of parties charged with the burden of the tax and not be confined to the donees only." *Id*.

Appellants seek to benefit from a credit for gift tax which was paid by the estate as a debt of the donor, Detlefs. They argue that their *receipt* of Detlefs' gifts gave rise to this gift tax credit. In reality, gift tax is imposed due to the donor's act of transferring his property by gift during his lifetime. Detlefs' lifetime transfers ultimately increased the estate tax burden on all interested persons liable under Nebraska's apportionment statute. Any credit for taxes due on these lifetime transfers

should be shared by all those persons who are made to bear the burden of the estate taxes. Neither law or equity requires that appellants alone should benefit from a credit given for gift tax liability.

Appellants' second assignment of error alleges that the county court erred in apportioning the interest due on the estate tax among the interested parties. The question that must be answered is whether this interest is part of "any estate tax levied or assessed . . . under the provisions of any estate tax law of the United States heretofore or hereafter enacted," which is subject to apportionment under § 77-2108.

There has long been a split of authority in this country's case law on whether state statutes directing apportionment of estate "tax" also include the interest due on such tax. See, Annot., 71 A.L.R.3d 247 (1976); 42 Am. Jur. 2d *Inheritance, etc., Taxes* § 390 (1969). This court has not directly addressed the issue, but certain inconsistencies become apparent if one compares our apportionment statute's history with case law on a similar issue. As mentioned previously, this state's apportionment statute was patterned after New York's original act. Therefore, it is of some value to consult New York case law which has interpreted the statute. New York courts have held that "[p]enalty interest is not a part of the tax but is something in addition to the tax." *In re Manville's Will*, 102 N.Y.S.2d 530, 532 (1950), *aff'd mem.* 278 A.D. 954, 105 N.Y.S.2d 979 (1951). Thus, absent a direction in decedent's will to the contrary, "the source of payment of penalty interest would be determinable under general equitable principles . . . ." 102 N.Y.S.2d at 532. Generally, New York courts interpreted the original apportionment statute (prior to its amendment by 1950 N.Y. Laws ch. 822) as giving no authority to apportion interest due on estate taxes. (See Annot., 71 A.L.R.3d, *supra.*)

On the other hand, this court has addressed a similar question and reached a result contrary to that of the New York courts. In *Reller v. Hays*, 192 Neb. 354, 220 N.W.2d 228 (1974), appellants were the beneficiaries of a trust created by will and were challenging, as in the case at bar, the trial court's order apportioning estate and inheritance taxes plus interest. Appellants alleged that the trial court erred in charging to

principal the interest on taxes. This court held that "estate and inheritance taxes, including interest and penalties, levied in respect of a trust . . . should be charged against principal . . . ." *Id.* at 357, 220 N.W.2d at 230.

While the facts differ between *Reller* and the case at bar, the impact of that prior decision remains. This court found no reason to separate the interest from the estate tax for purposes of apportioning that burden among the interested parties.

In addition, the Internal Revenue Code provides that "[a]ny reference in this title . . . to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax." I.R.C. § 6601(e)(1) (1982). Although federal interpretation of what constitutes "tax" is not dispositive of Nebraska's legislative intent under § 77-2108, it is at least a guidepost on this issue.

We are inclined to agree with appellees in this case, who argue that interest imposed on estate tax is part of the "tax" to be apportioned under § 77-2108. The original purpose of apportionment statutes was " 'to carry out principles of equitable contribution so that the person who receives the property which has created a tax will be required to bear the burden of the tax.' " Wright, *The Nebraska Apportionment Act*, 32 Neb. L. Rev. 517, 520 (1953). See, also, 42 Am. Jur. 2d, *supra* at § 392. Most importantly, the statutes were enacted to "circumvent instances of hardship and injustice resulting from the common-law rule prevailing in some jurisdictions that the entire estate tax burden, in the absence of a contrary direction in a will, must be borne by the residuary estate . . . ." *Id.* at 606. As a general rule, logic and equity seem to dictate that the purposes of and intent behind the enactment of apportionment statutes are best achieved by classifying interest as part of the "tax" to be apportioned. This is particularly true where, as in this case, the residue of the estate is to be distributed to charities, and, thus, the value of the residuary estate in no way added to the creation of the tax burden ultimately imposed.

We are not, however, willing to allow this "interest as tax" rule to be applied in a hard-and-fast fashion. The Uniform Estate Tax Apportionment Act adequately states the rule which could alleviate possible inequities which we envision may flow

from a strict application of the "interest as tax" rule. The act provides:

> (b) If the [Probate Court] finds that it is inequitable to apportion interest and penalties in the manner provided in this Act because of special circumstances, it may direct apportionment thereon in the manner it finds equitable.
>
> . . . .
>
> (d) If the [Probate Court] finds that the assessment of penalties and interest assessed in relation to the tax is due to delay caused by the negligence of the fiduciary [or personal representative], the court may charge the fiduciary [or personal representative] with the amount of the assessed penalties and interest.

Unif. Estate Tax Apportionment Act § 3, 8A U.L.A. 293-94 (1964).

Cases such as that before us necessitate adoption of the rule set forth in the Uniform Estate Tax Apportionment Act. After a thorough review of the facts in this case, we are troubled by situations where a personal representative could delay or avoid payment on estate and gift taxes for years, as interest continues to build, all the while knowing that all of this liability will eventually be apportioned among persons other than himself. We do not intend to imply that the personal representative in this case was, in fact, negligent, or that he acted improperly. We simply do not find adequate evidence in the record to support such a conclusion.

However, we do question the propriety of the personal representative's actions when he filed a federal estate tax form 706 in November of 1981 "on the basis that the . . . transfers [to Quadhamers and Kile] would be voided and all of that property would pass to the residuary beneficiaries, being the 11 charities." The record shows that the district courts *upheld* these transfers in September 1981. No doubt the personal representative's wishful thinking in November was a pleasant surprise to everyone concerned because, as filed, there were no estate taxes due. One cannot help but wonder, however, whether the ultimate burden of estate tax plus interest could have been considerably less had the original filing been based on the "worst possible scenario," i.e., that the land transfers were, in

fact, valid, as the district courts had held.

The Internal Revenue Code does make provisions for refunds or credits in the event of an overpayment. I.R.C. §§ 6401 to 6407 (1982). This court is not unmindful of the time limitations applicable to filing for such refunds. I.R.C. §§ 6511 to 6515 (1982). Such limitations may become one factor for a court to consider in scrutinizing the actions of a personal representative, but should not be used as an excuse for negligence or breach of a fiduciary duty.

The record in this case does not contain adequate evidence for this court to determine whether the personal representative acted improperly, given the facts of this case. Appellants had no control over the personal representative's decisions as to filing the necessary federal tax returns, but did stand to bear a substantial burden once an apportionment action was instituted. For this reason, equity compels this court to remand this cause on the issue of apportionment of interest, in order that evidence may be introduced as to the propriety of the personal representative's actions and its bearing on the amount of interest accrued. These proceedings and the decision of the lower court shall be in conformity with the rules of law as set forth above.

Appellants' final assigned error alleges that the trial court had no jurisdiction to enter a money judgment, with interest thereon, and therefore the order for interest on the amounts apportioned is void. This court's determination of the issue presented necessitates an interpretation of § 77-2112, which addresses the jurisdictional aspects of Nebraska's apportionment act.

In reality, § 77-2112 is a poorly drafted piece of legislation which creates considerable confusion. The statute first grants the county courts with jurisdiction "to hear and determine the apportionment and proration" of estate tax as set out in § 77-2108. The legislation then goes further, for reasons which are not readily apparent, and states that the "district court . . . shall have jurisdiction of an action in equity for an accounting and contribution after the apportionment and proration have been determined by the county court."

At first blush it might appear that a county court's order of

apportionment is only a first step in the process, and thus not a final order. Obviously, this raises a question as to the propriety of this court's even considering this appeal. Despite the inference raised by the lack of clarity of § 77-2112, we are not willing to hold that these county court apportionment orders are not final orders and thus are nonappealable. This court has previously held that an order is final and appealable when the substantial rights of the parties to the action are determined, even though the cause is retained for the determination of matters incidental thereto. *In re 1983-84 County Tax Levy*, 220 Neb. 897, 374 N.W.2d 235 (1985). For reasons which follow, we hold that county court apportionment of estate tax orders are final, appealable orders.

Our holding rests primarily on the language used within § 77-2112 in granting partial jurisdiction to the district courts. The statute grants district courts jurisdiction "of an action in equity for an accounting and contribution" and states that this action will come "*after* the apportionment and proration have been determined by the county court." An "action in equity for accounting and contribution" presumes that an underlying liability exists which necessitates such an action. (See, *National Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N.W.2d 39 (1983); 1A C.J.S. *Accounting* § 36 (1985).) In apportionment cases such as this one, that underlying liability is created by the county court order apportioning the federal estate tax. The district court "action in equity" contemplated by § 77-2112 is not a reevaluation of the apportionment order. That can be done only by appealing the apportionment order, the course of action pursued by appellants herein.

Appellants allege that the county court entered a "money judgment" against the interested parties. This characterization of the county court's order is not particularly accurate and appears to be only a method to bootstrap their argument that interest cannot be awarded on each party's apportioned share.

As mentioned earlier in this opinion, the county court apportionment proceedings are governed by principles of equity. Admittedly, as appellants assert, the apportionment statute does not refer to imposing such interest. However, this court has held that interest is sometimes allowed by courts of

equity, in the exercise of sound discretion, when it would not be recoverable at law. " ' "These courts . . . in their discretion, allow or withhold interest as, under all the circumstances of the case, seems equitable and just, except in cases where interest is recoverable as a matter of right." ' " *Newton v. Brown*, 222 Neb. 605, 617, 386 N.W.2d 424, 432 (1986).

We can find no abuse of discretion by the county court in ordering interest to be paid by each interested party on each one's respective share of the estate tax, except with respect to the date from which the interest was to run. Ultimately, the estate tax apportionment action is to benefit the residuary legatees, whose funds have borne the burden of the taxes. As we previously pointed out, state apportionment acts were passed to protect the residuary estate from the common-law rule which often depleted its funds. Consequently, courts of equity must strive to carry out that intent.

We cannot agree with the county court that such interest on each apportioned share shall run from the date on which the personal representative paid the federal estate tax and interest. The district court properly modified the county court's order when it held that "the personal representative of the estate is entitled to interest upon the advances of estate tax and interest thereon . . . from the date the apportionment order was entered . . . ." To impose interest from any date prior to the apportionment order would be grossly inequitable because appellants' liability for the tax cannot begin until apportionment pursuant to § 77-2108 is decreed by the court.

For the above-stated reasons, we affirm the district court's judgment which upheld the county court's order as to estate taxes due from appellants. We remand the cause to the district court with instructions to remand to the county court for further proceedings as to the issue of apportionment of interest on the estate tax liability. Finally, we affirm the district court's decision ordering interest to be paid on each apportioned share as modified to impose such interest from the date the county court apportionment order was entered.

AFFIRMED IN PART, AND IN PART REMANDED
FOR FURTHER PROCEEDINGS.