746 N.W.2d 136 (2008)
275 Neb. 256
In re Ervin W. BLAUHORN REVOCABLE TRUST
Orville Blauhorn, Trustee, appellee,
v.
Nancy L. Cockle et al., appellants.
No. S-06-531.
Supreme Court of Nebraska.
March 21, 2008.
*137 Joseph H. Murray, P.C, L.L.O., of Germer, Murray & Johnson, for appellants.
Steven E. Guenzel, of Johnson, Flodman, Guenzel & Widger, for appellee.
*138 HEAVICAN, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

I. INTRODUCTION
The primary issue presented by this case is the interpretation of the revocable trust of Ervin W. Blauhorn. In particular, this court is faced with the question of whether Ervin's trust specifically waived the apportionment of the estate tax against the beneficiaries of property received from the estate of Ervin's wife, Bonnie Blauhorn.

II. FACTS
The facts of this case are generally undisputed. This appeal centers on the revocable trusts of Ervin and Bonnie, a married couple. There were no children born of Ervin and Bonnie's marriage; however, the couple had many nieces and nephews. Ervin's sister had married Bonnie's brother, and five children were born of that marriage. These five individuals  Nancy L. Cockle, Janet M. Bridges, Ronald L. Scharvin, Linda K. Frank, and Kathleen A. Felker (referred to collectively as the Scharvins)  are related to both Ervin and Bonnie by blood and are the appellants in this action. In addition, Ervin had at least 13 other nieces and nephews. It appears that these 13 individuals, collectively the Blauhorns, were related by blood only to Ervin.
Ervin and Bonnie set up their estate plan by the use of a qualified terminable interest property (QTIP) trust that qualified for the marital deduction. The purpose behind this plan was to avoid federal estate tax liability upon the death of the first of the couple. However, this tax would later be imposed on the estate of the surviving spouse.
Bonnie died on January 27, 1997. Her credit shelter and QTIP trust provided generally that Ervin would receive the income from the trust property during his life and that at his death, the property would go to the Scharvins. Ervin and Janet were the co-personal representatives of Bonnie's estate and cotrustees of Bonnie's trusts. No federal estate tax was due upon Bonnie's death.
On December 17, 1997, Ervin executed a will, as well as the Ervin W. Blauhorn Revocable Trust Agreement, which was subsequently amended on three occasions. Pursuant to this will and trust, the Blauhorns were to inherit Ervin's property. Ervin died on December 26, 2001. At some point during the administration of Ervin's estate, the Scharvins were asked to pay a portion of the tax due from the estate, but refused to do so. The Scharvins based this refusal on article X of Ervin's trust agreement, which they argued evinced an intention on Ervin's part to waive any right of reimbursement against the Scharvins. Article X provides:
All the debts against Settlor's estate shall be paid as soon after Settlor's death as can conveniently be done. County inheritance tax shall be payable from the share of each beneficiary. Federal or state estate tax payable by Settlor's estate shall be allocated as follows with no right of reimbursement from any recipient or beneficiary of any such property whether of not such property passes under this Will. First the amount of the exemption equivalent for the unified credit available under the Internal Revenue Code at the time of Settlor's death shall be subtracted from the amount devised to the residual heirs of Settlor's estate. Then the federal and state estate tax shall be allocated among *139 the remaining beneficiaries according to the remaining balance received.
On April 10, 2003, Ervin's trustee filed a petition to register and interpret the trust, requesting the county court to order the Scharvins to reimburse the trust $97,189 for federal estate tax paid and $11,644.55 for inheritance tax paid. On December 20, 2005, the county court granted the trustee's request with respect to the federal estate tax and entered judgment in favor of the trust for $97,189. This amount was calculated by subtracting from Ervin's actual tax liability the amount of tax that would have been owed by Ervin's estate had his estate not also included Bonnie's assets. Then, on April 12, 2006, the county court entered an order determining the state inheritance tax owed by the various beneficiaries of both Ervin's and Bonnie's estates (i.e., the Scharvins and the Blauhorns). The Scharvins appeal, and the trust cross-appeals.

III. ASSIGNMENTS OF ERROR
On appeal, the Scharvins argue, renumbered and restated, that the county court erred in (1) ordering the Scharvins to reimburse the trust for federal estate tax paid, (2) considering the affidavit of Clifford Messner, (3) ordering the Scharvins to reimburse the trust for Nebraska inheritance tax paid, (4) granting the trust's motion for summary judgment, and (5) denying the Scharvins' motion for summary judgment.
On cross-appeal, the trust argues that the county court should have awarded prejudgment interest.

IV. STANDARD OF REVIEW
The interpretation of the terms of a trust is a question of law.[1] Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court.[2]
An appellate court reviews estate tax apportionment proceedings de novo on the record.[3]
Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[4]

V. ANALYSIS

1. ERVIN'S TRUST DID NOT SPECIFICALLY WAIVE ALLOCATION OF TAX

(a) Federal Estate Tax
In their first assignment of error, the Scharvins argue the county court erred in ordering them to reimburse the trust for a portion of the federal estate tax paid by the trust. We note at the outset that the Nebraska estate tax is not at issue in this appeal. The Scharvins argue that article X of Ervin's trust agreement waived any right of recovery against them and that instead, the full estate tax should be paid by the Blauhorns as beneficiaries under Ervin's trust. In particular, the Scharvins draw our attention to the following language in article X: "[T]ax payable by Settlor's estate shall be allocated as follows with no right of reimbursement from any recipient or beneficiary of any such property whether or not such property passes under this Will."
Some background as to the estate law principles at play is helpful to a full understanding *140 of the issue presented by this case. Prior to 1981, the Internal Revenue Code permitted a maximum marital deduction of 50 percent of the value of the estate to the first spouse to die.[5] This deduction was only available if the surviving spouse was given control over the disposition of the marital property at the time of the surviving spouse's death.[6] This all changed with the Economic Recovery Tax Act of 1981, which essentially created the QTIP trust.[7] In discussing the need for the QTIP trust, the 11th Circuit has observed:
As divorce and remarriage rates rose, Congress became increasingly concerned with the difficult choice facing those in second marriages, who could either provide for their spouse to the possible detriment of the children of a prior marriage or risk under-endowing their spouse to provide directly for the children. In the Economic Recovery Tax Act of 1981, Congress addressed this problem by creating the QTIP exception to the terminable property rule. According to the House of Representatives Report, the QTIP trust was designed to prevent a decedent from being "forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children."[8]
The current allowance for QTIP trusts is found in I.R.C. §§ 2044 and 2056(b)(7)(B) (2000).
As the facts above indicate, Bonnie and Ervin's estate plan employed a QTIP trust. Bonnie, as the first to die, left a life interest in her property to Ervin with the remainder interest to the Scharvins. No tax was paid on Bonnie's estate. When Ervin died, his property was left to the Blauhorns, while the life interest he held in Bonnie's property was extinguished and the Scharvins received full ownership of the property. Tax was owed (and eventually paid) by Ervin's estate. It is reimbursement for a portion of this tax which is" at issue in this case.
Section 2207A of the Internal Revenue Code is instrumental in answering this question. That section provides in relevant part:
(a) Recovery with respect to estate tax
(1) In general
If any part of the gross estate consists of property the value of which is includible in the gross estate by reason of section 2044 (relating to certain property for which marital deduction was previously allowed), the decedent's estate shall be entitled to recover from the person receiving the property the amount by which 
(A) the total tax under this chapter which has been paid, exceeds
(B) the total tax under this chapter which would have been payable if the value of such property had not been included, in the gross estate.
(2) Decedent may otherwise direct
Paragraph (1) shall not apply with respect to any property to the extent that the decedent in his will (or a revocable trust) specifically indicates an intent to waive any right of recovery under this *141 subchapter with respect to such property.[9]
Prior to 1997, § 2207A(a)(2) provided only that "Decedent may otherwise direct by will[.] Paragraph (1) shall not apply if the decedent otherwise directs by will."[10]
As an initial matter, we note that Congress' general intent with respect to the federal estate tax is that it be governed by state law and that absent contrary congressional enactments, state law governs the allocation of tax burden.[11] However, we conclude that § 2207A directly applies to the question presented by this appeal and, as such, is a contrary congressional enactment. As a result, we conclude that § 2207A preempts any applicable state law to the extent that state law might purport to deal with the payment of federal estate tax attributable to QTIP.[12]
Under § 2207A, Ervin's estate is entitled to recover from the Scharvins the tax paid by the estate that would not have been owed had Bonnie's property not been included in Ervin's estate. But § 2207A does provide an exception for Ervin that if he, by will or trust, "otherwise direct[ed]" by "specifically indicating] an intent to waive any right of recovery under this subchapter," then no recovery is allowed.
The question of whether a decedent "otherwise directed]" has previously been addressed by other jurisdictions. For example, in Matter of Estate of Gordon,[13] the court, in interpreting the pre-1997 version of § 2207A, concluded that specific reference to QTIP was required in order to "`otherwise direct ... by will.'" Other jurisdictions have followed suit.[14] Our research has revealed no cases interpreting the current, i.e., 1997, version of § 2207A. We note, however, that the current version is more specific than its predecessor with respect to waiver. We conclude, therefore, that the 1997 amendment only reinforces the correctness of prior decisions.
In addition, a plain reading of the statute supports requiring a specific reference to QTIP. Statutory language is to be given its plain and ordinary meaning. An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[15] Section 2207A provides *142 that "an intent to waive any right of recovery under this subchapter" must be specifically made. (Emphasis supplied.) A plain reading of the language shows that some reference to "this subchapter," in other words, § 2207A(a), is necessary in order to show a testator's intent to waive the right to recovery.[16]
The language of article X of Ervin's trust agreement, which was signed after the effective date of the current version of § 2207A, indicated that there was to be no right of reimbursement against recipients or beneficiaries. However, we conclude that such was insufficient to waive the trust's right of reimbursement under that section. As is detailed above, this is so because there was no reference to § 2207A, or even to the QTIP trust or property, in article X, and thus no language "specifically indicating] an intent to waive any right of recovery under this subchapter" as required by § 2207A. The county court did not err in ordering the Scharvins to reimburse the trust for a portion of the federal estate tax paid by the estate, and the Scharvins' first assignment of error is without merit.

(b) Affidavit of Clifford Messner
In their second assignment of error, the Scharvins argue that the county court erred in considering the affidavit of Clifford Messner. Messner was an attorney for Ervin's estate. In his affidavit, Messner averred that he was the attorney who prepared the federal estate tax return for the estate. A copy of that return was attached to the affidavit and indicated that a total of $131,229 was paid in federal estate tax. Also attached to the affidavit was a copy of a federal estate tax return completed without the inclusion of Bonnie's property that passed under her QTIP trust. That calculation shows the federal estate tax due without the inclusion of Bonnie's property would have been $34,040.
The Scharvins contend that this affidavit and an unverified allegation in the petition to register and interpret the trust are the only evidence of the amount "supposedly due and owing ... for the federal estate tax."[17] The Scharvins argue that while Messner's affidavit states that Messner is an attorney, "it does not set forth his expertise in preparing federal estate tax returns or indicate that the calculations were correctly made."[18] As such, the Scharvins argue that the affidavit was not competent under Neb.Rev.Stat. § 25-1334 (Reissue 1995).
Section 25-1334 provides in part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."
The Scharvins' argument is without merit. Messner, as the attorney who actually completed the federal estate tax return for the estate, was competent to testify to the amount he calculated as being due on that return. In addition, Messner was competent to testify about the alternative calculation he performed wherein he omitted Bonnie's property from the estate.
The Scharvins' complaint seems to be that there is nothing to suggest that Messner's calculations were correct. However, Messner's calculations were the only evidence of the tax imposed upon the estate *143 or of the amounts that would have been due without the inclusion of Bonnie's property in the estate. In opposing the trust's motion for summary judgment, the Scharvins had the opportunity to enter into the record evidence showing that Messner's calculations were incorrect. No such evidence was introduced. As such," the county court did not err in considering Messner's affidavit. The Scharvins' second assignment of error is also without merit.

(c) Nebraska Inheritance Tax
In their third assignment of error, the Scharvins argue that the county court erred in assessing Nebraska inheritance tax against them. We have considered the Scharvins' assignment of error and conclude that it is without merit.

(d) Remaining Assignments of Error
Because the county court did not err in finding that the trust was entitled to reimbursement for federal estate tax and inheritance tax, we conclude that the two remaining assignments of error  that the county court erred in granting the Blauhorns' motion for summary judgment while denying the Scharvins' motion  are without merit.

2. CROSS-APPEAL
Ervin's trustee has filed a purported cross-appeal in this case. While, the trustee's cross-appeal is noted on the cover of the brief and set forth in a separate division of the brief, the brief submitted contains no assignments of error. Neb. Ct. R. of Prac. 9D(4) (rev.2006) requires that briefs on cross-appeal be "prepared in the same manner and under the same rules as the brief of appellant." And rule 9D(1)(e) requires "[a] separate, concise statement of each error a party contends was made by the trial court ...." Because the trust's brief on cross-appeal does not comply with our rules, we need not address the cross-appeal.

VI. CONCLUSION
We conclude that the county court did not err in granting the trust's motion for summary judgment and denying the Scharvins' motion. The Scharvins are required to reimburse the trust for $97,189, and they are also required to pay a portion of the inheritance tax as found by the county court. The order of the county court is affirmed.
AFFIRMED.
NOTES
[1] See, In re Trust of Rosenberg, 273 Neb. 59, 727 N.W.2d 430 (2007); Smith v. Smith, 246 Neb. 193, 517 N.W.2d 394 (1994).
[2] See Smith v. Smith, supra note 1.
[3] See In re Estate of Detlefs, 227 Neb. 531, 418 N.W.2d 571 (1988).
[4] In re Interest of Kevin K., 274 Neb. 678, 742 N.W.2d 767 (2007).
[5] Matter of Will of Adair, 149 N.J. 591, 695 A.2d 250 (1997).
[6] Id.
[7] Id.
[8] Estate of Shelfer v. C.I.R., 86 F.3d 1045, 1049 (11th Cir.1996)
[9] I.R.C. § 2207A(a) (2000).
[10] I.R.C. § 2207A(a)(2) (1994).
[11] Riggs v. del Drago, 317 U.S. 95, 63 S.Ct 109, 87 L.E. 106 (1942).
[12] See, e.g., Cleveland v. Compass Bank 652 So.2d 1134 (Ala.1994); In re Estate of Klarner, 113 P.3d 150 (Colo.2005); In re Probate of Will of lee, 389 N.J.Super. 22, 910 A.2d 634 (2006). Cf. Matter of Estate of Meyer, 702 N.E.2d 1078 (Ind.App.1998) (finding that § 2207B dealing with reimbursement resulting from retained life interest preempted state law).
[13] Matter of Estate of Gordon, 134 Misc.2d 247, 248, 510 N.Y.S.2d 815, 816 (1986).
[14] See Firstar Trust Co. v. First Nat. Bank of Kenosha, 197 Wis.2d 484, 541 N.W.2d 467 (1995). But see In re Estate of Miller, 230 Ill.App.3d 141, 172 Ill.Dec. 269, 595 N.E.2d 630 (1992) (interpreting pre-1997 version of § 2207A). Cf., In re Estate of Karner, supra note 12 (where § 2207A also preempted state estate tax, specific reference to QTIP trust or § 2207A required in order to waive recovery of state estate tax); Matter of Will of Adair, supra, note 5, 149 N.J. at 604, 659 A.2d at 257 (under state statute, court concluded generalized language regarding payment of tax was insufficient to "evidence[ ] an intent[ ] to exonerate"); Matter of Estate of Gordon, supra note 13 (in addition to concluding that specific reference required under § 2207A for federal estate tax, court concluded that such reference was also required under state estate tax).
[15] Zach v. Nebraska State Patrol, 273 Neb. 1, 727 N.W.2d 206 (2007).
[16] See, also, H.R.Rep. No. 105-220, 105th Cong., 1st Sess., reprinted in 1997 U.S.C.C.A.N: 1129; 26 C.F.R. § 20-22071(e) (2007).
[17] Brief for appellants at 16.
[18] Id.